**In re Richard R. WYCKOFF d/b/a The Waterbed Place, Debtor.**

**Bankruptcy No. NT 84–01605.**

United States Bankruptcy Court, W.D. Michigan.

July 23, 1985.

Brott, Conaway & Kipley, P.C., David M. Kipley, Acme, Mich., for trustee.

Graff & Hunt, Rex O. Graff, Jr., Traverse City, Mich., for Frank W. Tezak, d/b/a Space Agents.

Freeman, McKenzie, Matthews, Scherer & Stepek, P.C., Dawn M. Rogers, Traverse City, Mich., for Federal Deposit Ins. Corp.

## OPINION

DAVID E. NIMS, Jr., Bankruptcy Judge.

Richard R. Wyckoff, d/b/a The Waterbed Place (Debtor), filed a Chapter 7 bankruptcy petition on July 11, 1984, at which time the Western District of Michigan Trustees, Inc., was appointed as trustee. The Debtor's assets consisted primarily of inventory and accounts receivable on which the National Bank and Trust had a lien as security for its loan to Debtor. Prior to the bankruptcy, the bank was declared insolvent and the Federal Deposit Insurance Corporation (FDIC) as receiver purchased assets from the bank, including the note and security agreement signed by Debtor. At the time of the bankruptcy filing, the principal and interest owing on the note was $7,332.19. Prior to filing, Debtor had been renting its business premises from Frank Tezak, d/b/a Space Agents (Tezak). Although Debtor was no longer engaged in business, the trustee, after his appointment, retained possession of the leased premises for the purpose of housing Debtor's waterbed inventory for eventual auction sale. Tezak expressed his opinion to the trustee that the monthly rental of $1,200.00 was an unnecessarily

costly obligation to take on in view of the fact that the premises were used for storage purposes only. However, the trustee assured Tezak that he would be able to file an administrative expense claim for recovery of any postpetition rentals due.

The lease term expired on September 1, 1984, and Tezak moved for relief from stay in order to recover possession. The trustee requested to be permitted to continue possession so as to avoid moving costs and to enable him to conduct an eventual auction sale on Tezak's property. The preliminary hearing was held October 3, 1984; because the lease contained an option to renew, Judge Howard permitted the lease to continue until no later than November 3, 1984. On that date an auction sale of the inventory was held, resulting in net proceeds of $7,978.28. After the sale, the trustee finally returned the business premises to Tezak.

The only funds available with which to pay off FDIC's secured claim and any other claims are the proceeds from the sale of inventory and proceeds of accounts receivable, on which FDIC also had a lien, for a total of about $10,000.00. Subsequent to the sale, the court allowed the auctioneer's fees and expenses in the total amount of $902.29. Also after the sale, the trustee filed an application to disburse $7,332.19 to FDIC in satisfaction of its lien. Payment of this amount would leave only $2,667.81 in the estate for administrative claims, including those of Tezak and the auctioneer. In response, Tezak filed its claim for postpetition rent. The court allowed the claim in the amount of $4,704.19 as a first priority administrative expense claim under 11 U.S.C. § 503(b)(1)(A). Tezak also filed an objection to disbursement of $7,332.19 to FDIC, claiming that because the trustee insisted on using its premises to store the inventory, the postpetition rent incurred by the trustee should be charged to FDIC pursuant to 11 U.S.C. § 506(c).

A hearing on these matters was held January 16, 1985. In support of its objection, Tezak pointed out that he had made continuous efforts to convince the trustee that the inventory should be housed in a less expensive location; Tezak offered to help in the relocation, and even offered to provide storage in a certain weatherproof construction work trailer. Finally, upon termination of the original lease, Tezak moved for a lift of stay, which was denied so that an auction could be held. FDIC claims by affidavit signed by its liquidation assistant that it was informed by the trustee at the first meeting of creditors that it was oversecured and that it would not be successful in attempting to have its collateral turned over to it. On this occasion and on several others, FDIC was assured by the trustee that it would be paid in full after the collateral was sold.

There is no question but that if FDIC realizes its secured claim in full out of the proceeds of its collateral, that Tezak will receive less than one half of the amount owing to him as an administrative expense claimant. The issue, then is whether Tezak's administrative expense claim for rent owing by the estate can be charged to FDIC under 11 U.S.C. § 506(c).

11 U.S.C. § 506(c) provides:

"(c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."

According to the legislative history, 11 U.S.C. § 506(c) was meant to be a codification of pre-existing law. (Senate Report No. 95–989)

The volume of caselaw on the question of expenses chargeable to a secured party is huge and includes cases under both the 1898 and 1978 Acts; the court would estimate there to be between 50 to 100 reported decisions on the subject. In the case of *In re Louisville Storage Co.* 93 F.2d 1008 (6th Cir.1938) aff'g per curium 21 F.Supp. 897 (W.D.Ky.1936), the court at page 899 stated:

"It was contemplated under the Bankruptcy Law, section 67, as amended, 11 U.S.C.A. § 107, that adjudication in bankruptcy would not affect valid existing liens on the property of the bankrupt at

the date of adjudication, and, for the protection of lienholders on the sale of such property in the bankruptcy action, the proceeds arising therefrom should be paid to the lienholder without charging against him any of the expenses of administration solely for the benefit of the general estate.

\*   \*   \*   \*   \*   \*

"It has always been the rule inherent in general principles of equity that the lienholder must bear the expense of bankruptcy administration which is solely for his benefit, or to which he consents, or which he causes."

(citations omitted)

Among the more recent Circuit Court of Appeals decisions is *In re Trim X Inc.* 695 F.2d 296 (7th Cir.1982), a case in which the trustee, who had abandoned the collateral in question after determining that there was no equity, sought to recover from CCBL the secured creditor, expenses for use and occupancy, security costs, and utility charges. The court held at page 301:

"Traditionally administrative expenses have not been charged against secured creditors. See *In re Tyne*, 257 F.2d 310 (7th Cir.1958). The reason for that rule is that a trustee in bankruptcy acts 'not on the authority of [secured creditors] and for their interest, but on the authority of the court and for the interest of the general creditors.' *Robinson v. Dickey*, 36 F.2d [147] at 149. An exception to that general rule has been recognized, however, when expenses of preservation are incurred primarily for the benefit of the secured creditor or where the creditor caused or consented to such expenses.

"The bankruptcy court's determination that the expenses incurred prior to the trustee's petition for abandonment were not for the benefit of CCBL, is consistent with this rule. Although the secured creditor eventually 'benefited' from these expenses in the sense that it received the assets unharmed, it did not in any way consent to or cause these expenses. Further, placing the responsibility for these expenses on a secured creditor would discourage a trustee from taking reasonable steps to assess an estate's position. As explained in *In re Codesco, Inc.*, 18 Bankr. 225, 230 (Bankr.S.D.N.Y.1982), section '506(c) was not intended as a substitute for the recovery of administrative expenses that are appropriately the responsibility of the debtor's estate.' "

The court went on to find that the expenses incurred prior to the trustee's commitment to abandon the assets were not for the benefit of the secured creditor. See also *In re Flagstaff Foodservice Corp.*, 739 F.2d 73 (2nd Cir.1984).

In our case, not only did the trustee never abandon the assets on which FDIC had a lien, he represented to FDIC that there would be no abandonment because FDIC was oversecured and the assets would be sold at auction.

In denying recovery under 11 U.S.C. § 506(c) to the debtor-in-possession in *Brookfield Production Credit Association v. Borron* 738 F.2d 951 (8th Cir.1984), the court cited with approval, at page 952, the district court opinion as follows:

"[t]o recover, the debtor-in-possession must expend the funds primarily to benefit the creditor, who must in fact directly benefit from the expenditure. *In re Sonoma V.*, 24 B.R. 600 ([Bkrtcy.App.Cal], 9th Cir.1982). Expenses undertaken to improve the position of the debtor-in-possession, although indirectly benefiting the creditor, are not recoverable. *In re Codesco, Inc.*, 18 B.R. 225 ([Bkrtcy]., S.D.N.Y.1982). Several courts require the debtor-in-possession or trustee to establish a quantifiable, rather than qualitative or speculative, benefit. See, e.g., *In re Flagstaff Foodservice Corporation*, 29 B.R. 215 ([Bkrtcy]., S.D.N.Y. 1983). In sum, courts construing 506(c) appear to require the debtor-in-possession, who bears the burden of proving benefit, to show that absent the costs expended the property would yield less to the creditor than it does as a result of the expenditure, although the provision does not expressly impose such a re-

quirement. *Dozoryst v. First Financial Savings and Loan of Downers Grove,* 21 B.R. 392 ([D.C.], N.D.Ill.1982)."

3 Collier on Bankruptcy ¶ 506.06 (15th Ed.1985) provides as excellent summary of the caselaw under 11 U.S.C. § 506(c) and includes the following observations:

"However, when the secured creditor derived no benefit from such costs and expenses, or any benefit derived therefrom could have been obtained even in the absence thereof or the benefit is indefinite and remote, no recovery should be permitted under section 506(c) * * *

"The reasonableness of the costs and expenses sought to be charged under section 506(c) is often measured against the benchmark of the amount of the costs and expenses which would necessarily have been incurred by the holder of the secured claim in foreclosing on the property on its own behalf, particularly when such holder has not consented to the disposition by the debtor, debtor in possession or trustee. * * *

"While consent may in some cases be implied from a wide range of affirmative conduct on the part of the secured claimant, it appears to be improper to imply consent to a recovery of administrative expenses under section 506(c) from acquiescence by a secured creditor in the employment of chapter 11 to liquidate its collateral or from a failure to object, move to lift the automatic stay or take similar action on the part of the secured claimant."

See also, *In re West Post Road Properties* 44 B.R. 244 (Bankr.S.D.N.Y.1984), which gives a summary of the caselaw under 11 U.S.C. § 506(c).

■ It appears, from a review of the relevant authority, that in order for the trustee to recover expenses from the secured creditor, he must establish either that the expenses result in a direct quantifiable benefit to the secured creditor which enabled him to realize as much or more than he would have by enforcing his own security, or that the creditor consented directly or by implication arising from some kind of affirmative conduct.

One case with a fact situation somewhat similar to ours is *In re Proto Specialties, Inc.* 43 B.R. 81 (Bankr.D.Ariz.1984). In that case, sale of debtor's equipment and machinery and collection of accounts receivable yielded proceeds insufficient to pay in full both the secured claimants and the administrative expenses. The court first denied the lessor's motion to receive postpetition rent due for collateral storage under 11 U.S.C. § 506(c) for lack of standing, and also because of a waiver subordinating its rights to that of the secured creditor. However, the court also found that the trustee would not be precluded from bringing a 11 U.S.C. § 506(c) motion for reimbursement of storage costs, and proceeded to decide the motion on the basis, even though the trustee apparently was not a moving party.

■ This would seem to be an appropriate way of handling the problem of standing. Courts differ as to whether or not claimants such as a creditors' committee or debtor's attorney have standing under 11 U.S.C. § 506(c): see Collier, Supra at 506–51. But our case, like *Proto Specialties,* involves a party whose claim is based on an expense incurred by the trustee. If there were a legitimate right to recover from a secured creditor under 11 U.S.C. § 506(c) in order to pay a third party claimant and the trustee failed to assert that right, is the claimant without a remedy? This court believes it has the right to either permit the motion to be brought by the lessor or in the alternative to proceed as did the court in *Proto Specialties* and grant any recovery of expenses to be had to the trustee who can in turn pay off the lessor.

In *Proto Specialties* the court held:

"What is required is a manifested, objective act by the Trustee to establish a cleavage date after which the Trustee's efforts went only to preserving assets that were to go to the lienholder.

"From the evidence presented, the first such manifested act appears to be the Trustee's notice of sale filed April 13,

1984. This sale ultimately created the fund to pay the lienholders.

"Sale expenses will include reasonable storage costs provided by CMD from that date until the landlord regained sole possession."

The court ordered that payment from proceeds be made first to the trustee for the lessor's storage costs from the date of notice of sale to the date that lessor regained possession, and then to the secured claimants, followed by 11 U.S.C. § 507(b) and 11 U.S.C. § 507(a)(1) claims.

■ In our case, notice of the auction sale was filed October 29, 1984, and lessor regained possession of the premises after the sale was held on November 3, 1984. Based on $1,300.00 per month rent, the amount of rent accrued over that five-day period would be $210.00. FDIC concedes that the auctioneer's expenses and commissions totalling $902.29 should be paid ahead of it, because it would have incurred similar costs if not for the bankruptcy. Applying the court's reasoning in *Proto Specialties* the $210.00 is the maximum additional amount that should be paid prior to FDIC. As FDIC is oversecured by over $2,000.00, this will not preclude it from recovering its secured claim in full, just as it would outside of bankruptcy by adding its expenses to the amount of its secured claim. See *In re West Port Road Properties* 44 B.R. 244, 247–248 (Bankr.S.D.N.Y.1984).

In view of the factors outlined above which are necessary for a recovery under 11 U.S.C. § 506(c), the court would not be justified in paying the remainder of Tezak's expenses ahead of FDIC. If it did so, then FDIC, an oversecured creditor, would be paid more than $2,000.00 less than its claim; obviously FDIC could not be said to benefit from such a result. If not for the bankruptcy it could have disposed of its collateral much sooner and at a total cost that would have enabled it to realize the amount of its claim in full. Such costs may have included a small storage fee as well as costs of sale, but clearly it would not have found it necessary to store the inventory for four months at a cost exceeding $1,200.00 per month. The only reason the trustee could have had for incurring such an expense was the expectation of eventual benefit to unsecured creditors. This is not a permissible reason for surcharging a secured creditor. FDIC did nothing to indicate its consent to being charged with the expenses; on the contrary, its representative was told by the trustee that it would be unable to regain possession of the property because it was oversecured and that the trustee intended to sell the collateral so that unsecured creditors would receive a dividend.

In view of the facts and applicable law, the court finds that the only expenses which benefitted FDIC directly are the actual auction expenses and storage costs for five days. Only these expenses, therefore, should be paid prior to paying FDIC's secured claim; any remaining amount left over after FDIC is paid in full may be paid to Tezak and any other administrative expense claimants under 11 U.S.C. § 503(b).

Although the court sympathizes with Tezak, it would be contrary to law and equity to require FDIC, who was also not at fault, to take the loss.

Payment shall be made in the following order:

1. $902.29 to the auctioneer, if not already paid.
2. $210.00 to Frank Tezak.
3. $7,332.19 to FDIC.
4. Remainder to be paid in proportionate shares to Tezak and any other administrative expense claimants.