**In re DAKOTA LAY'D EGGS, a/k/a Dakota Crackin', Inc., Debtor.**

**Bankruptcy No. 85–05756.**

United States Bankruptcy Court,
D. North Dakota.

Jan. 20, 1987.

Brad Sinclair, Fargo, N.D., for Gap Creditors.

Lowell Bottrell, Fargo, N.D., for Trustee.

Donovan Foughty, Devils Lake, N.D., for First Nat'l. Bank.

Roger Royse, Fargo, N.D., for J.M. Huber Corp.

Paul Jones, St. Paul, Minn., for First American Bank of Rugby.

Larry Baer, Cando, N.D., for Triangle Corp.

Gary Cameron, Moorhead, Minn., Trustee.

William Westphal, Minneapolis, Minn., U.S. Trustee.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

By Motion filed December 5, 1986 as later amended, three gap creditors seek to have their claims treated as administrative expenses and paid by assessing the proceeds of secured collateral. The motion is resisted by First National Bank of Devils Lake and First American Bank of Rugby both of whom hold perfected security interests in the collateral sought to be assessed.

### 1.

A hearing was held on December 30, 1986, at which time the parties were able to agree on the relevant facts which may be stated as follows:

Dakota Lay'd Eggs (Debtor) is a North Dakota company who owned egg production facilities at several sites in the state. The Debtor owned chicken flocks as well as the buildings and physical equipment at these sites. On December 5, 1985, an involuntary Chapter 7 petition was filed by certain of the company's creditors and after a contested hearing, this court, on February 7, 1986, entered an order for relief pursuant to Chapter 7 of the Bankruptcy Code. *In re Dakota Lay'd Eggs*, 57 B.R. 648 (Bankr.N.D.1986).

During the period between petition filing and entry of the order for relief, the Debtor continued in business which included the care and feeding of chicken flocks. During this gap period the movants; Minn-kota Ag Products, Wolverton Farmer's Elevator and Woods Farmer's Elevator provided the Debtor with feed and other supplies necessary to maintenance of the chicken flocks. Minn-kota provided feed product in the sum of $33,543.61, Wolverton Farmer's Elevator provided $53,540.00 of feed product, and Woods Farmer's Elevator provided $40,036.63 of feed product. The parties agree that the charges for these supplies were reasonable and that without such supplies the chickens would have died.

First National Bank has a valid purchase-money security interest in the chickens situated in Cando, North Dakota and First American Bank has a valid security interest in all farm products, inventory, equipment, fixtures, accounts and general intangibles wherever located as well as mortgages on various tracts of real property. Subsequent to the order for relief the trustee liquidated the various chicken flocks depositing the proceeds thereof into two separate bank accounts at Norwest Bank, Fargo. Account number 415927 representing proceeds of the Cando flock exists in the sum of $30,843.87 and account number 87726 representing proceeds of the Moorhead flocks is in the sum of $12,457.75. The trustee also is possessed of a separate operating account on deposit with Norwest Bank having an approximate balance of $26,082.54. As of February 7, 1986, the outstanding indebtedness to First American Bank stood at $1,729,015.19 and on December 3, 1986, the bank moved for relief from stay. No one contests the secured status of the banks' except to the extent that the three gap creditors wish to be paid from the proceeds of the chicken flocks. This court granted First American Bank relief from stay directing that the two accounts representing chicken sale proceeds be retained in escrow until resolution of the instant motion.

### 2.

Although conceding they are gap creditors, the movants argue that they are nonetheless entitled to maintain a claim under section 506(c) in consequence of the feed provided during the gap period, which they assert was necessary to the preservation of the banks' collateral. As section 506(c) claimants, they urge treatment of their claims under section 503(b)(1)(A). The banks take the position that claims of gap creditors are not entitled to section 503(b)(1)(A) administrative expense treatment under a clear reading of the Bankruptcy Code. They further point out that recovery under section 506(c) is restricted to the trustee or debtor in possession and is available only upon demonstrated showing of benefit to the secured creditor.

Section 503 is that section of the Code which defines what expenses will be considered administrative expenses and thus

entitled to first priority under section 507(a)(1). Section 503(b)(1)(A) under which the movants seeks administrative expense treatment of their claims provides:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case:

11 U.S.C. § 503(b)(1)(A).

An involuntary case is commenced by filing a petition and an estate is thereby created. 11 U.S.C. § 503(b) and § 541(a). The caveat to this is that until the order for relief is actually entered, a debtor may continue to operate his business and continue use of his property as if no case had been commenced. 11 U.S.C. § 303(f). The effect of this is that while a case may be commenced by the event of petition filing, the estate does not pass out of the debtor's hands nor are rights of parties fixed until an order for relief is granted. It is only when the order for relief is granted that the estate passes from the debtor to the trustee. *In re Andreotti*, 16 B.R. 28 (Bankr.E.D.Cal. 1981). Section 502(f) deals specifically with claims arising in an involuntary case during the gap period between the time of petition filing and the time the order for relief is entered. Such gap claims, if allowed, are entitled to treatment as if they were claims arising before the date of the petition filing.

Section 507 providing for the ordering of priorities provides in subsection (a)(2) a second priority for "unsecured claims allowed under section 502(f) of this title". Administrative expenses allowed under section 503(b) are accorded first priority treatment but as discussed, section 503(b) by its language plainly excludes gap claims from administrative expense treatment.

Section 503(b)(1)(A) allows actual and necessary costs of preserving the estate to be accorded administrative expense status. Generally, however, secured collateral can-not be impressed for the payment of administrative expenses. Section 506(c) is the only Code exception to this and its language limits the right of recovery to the trustee or the debtor in possession by virtue of section 1107. Section 506(c) provides as follows:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

11 U.S.C. § 506(c).

The strict applicability of section 506(c) suggested by the language of the statute itself has not been uniformly adhered to by the courts. There is a body of case law which has been loath to extend the remedy to any save the trustee and debtor in possession. *In re J.R. Research, Inc.*, 65 B.R. 747 (Bankr.D.Utah 1986); *In re New England Carpet Co.*, 28 B.R. 766 (Bankr.D. Vt.), *aff'd*, 38 B.R. 703 (D.Vt.1983); *In re S. & Indus., Inc.*, 30 B.R. 395 (Bankr.E.D. Mich.1983); *In re Codesco, Inc.*, 18 B.R. 225 (Bankr.S.D.N.Y.1982). However, a less strict reading has been given the section by other courts. The case of *In re Loop Hosp. Partnership*, 50 B.R. 565 (Bankr.N. D.Ill.1985) declined to follow *Codesco* and allowed attorneys to recover fees pursuant to section 506(c). In *In re Isaac Cohen Clothing Corp.*, 39 B.R. 199 (Bankr.S.D.N. Y.1984) the court allowed a landlord to recover rents and in *In re T.P. Long Chemical, Inc.*, 45 B.R. 278 (Bankr.N.D.Ohio 1985) the E.P.A. was allowed to maintain a claim under section 506(c) for expenses incurred in the removal of hazardous wastes. Although these courts impliedly allowed non-trustees to maintain a claim under section 506(c), none of them squarely addressed the seemingly strict language of the section which does limit the right of recovery to trustees. The court in *In re Wyckoff*, 52 B.R. 164 (Bankr.W.D.Mich. 1985) agonized over the limiting language and opined that a creditor ought to be able to maintain the action if it is one which the trustee could have maintained but did not. "If there were a legitimate right to recover

from a secured creditor under 11 U.S.C. § 506(c) in order to pay a third party claimant and the trustee failed to assert that right, is the claimant without a remedy?" *Wyckoff*, 52 B.R., at 167. *Wyckoff* suggests that if the section 506(c) claim brought by a creditor is one which could have been brought by the trustee, then the court ought to go ahead and entertain it as if the claim were being, in fact, advanced by the trustee.

■ While this court is sympathetic with the equitable concerns raised in *Wyckoff*, it does not believe it is proper to ignore the clear language of section 506(c) and allow the indiscriminate maintenance of 506(c) claims by general unsecured creditors. Restricting the section 506(c) remedy to trustees, harkens to the basic principle of Chapter 7 liquidations that all property of the estate vests in the trustee and it is for the trustee to administer and close the estate. The trustee's legitimate efforts in this regard could be thwarted and control lost if courts were to routinely allow general creditors to intervene in case administration by seeking costs and expenses under section 506(c). Recognizing the concern raised in *Wyckoff*, the better practice would be for a concerned creditor to first approach the trustee suggesting to him that recovery under section 506(c) be made. If then the trustee refuses to take action, the creditor could seek his removal under section 364 or could petition the court for authority to maintain a section 506(c) action in the trustee's name. The court therefore does not regard the present motion by gap creditors as properly maintained.

■ Nonetheless, even if commenced in the proper procedural framework, the issue remains whether a gap creditor's claim can by virtue of section 506(c) be accorded administrative expense status.

A gap creditor cannot avoid the preclusionary effect of section 503(b) by asserting a claim under section 506(c), for section 506(c) in and of itself does not define what will be regarded as an administrative expense, but rather provides a basis for recovery of necessary expenses from a creditor's collateral. It is section 503(b)(1)(A) that, in turn, accords the right to such recovery the status of an administrative expense. And it is precisely section 503(b) that expressly prevents a gap creditor's claim from being regarded as an administrative expense. Regardless of the reasons for, motivation for, purpose of, or necessity of, services and goods provided to a debtor in consequence of carrying on its usual business during a gap period, a gap creditor's claim cannot be accorded treatment as an administrative expense. *See generally* 3 Collier on Bankruptcy ¶¶ 502.06 and 503.2 (15th ed. 1983). Even if general unsecured creditors can in some way maintain a case for relief under section 506(c), this ability does not metamorphose a gap creditor's claim into an administrative expense. It cannot, for section 503(b) plainly precludes it from happening. The claims of gap creditors are regarded as having arose pre-petition and thus cannot be regarded as having arose in consequence of estate administration.

Having reached this conclusion, it is unnecessary to discuss whether and to what degree the expenses incurred benefited the banks. It is worth noting, however, that recovery under section 506(c) requires something more than a speculation as to possible benefit. According to the leading decision in this circuit, recovery mandates that the expenditure be primarily for the creditor's benefit. *Brookfield Production Credit Assn. v. Borron*, 738 F.2d 951 (8th Cir.1984). The Eighth Circuit in an earlier case pointed out that a debtor has an independent duty to protect and conserve property in his possession for the benefit of creditors. *Matter of Halux, Inc.*, 665 F.2d 213 (8th Cir.1981). Our own court has reached a similar result in the case of *In re Bohne*, 57 B.R. 461 (Bankr.N.D.1985). In *Bohne* this court said that any claimed benefit inuring to a secured creditor must be more than what would incidentally occur as a result of the debtor's independent duty to reasonably care for the collateral. So, while the collateral, in this case consisting of chicken flocks, may well have died without feed supplies, those supplies were part of the usual and customary care one would

expect a chicken farmer to provide in consequence of the raising and production of chickens and eggs. Nothing in the evidence suggests the feed was extraordinary or something not expected of a farmer in the routine course of chicken farming—an enterprise the Debtor was in and by virtue of its resistance to the involuntary petition, wished to remain in. The benefit afforded by the feed to the banks' interest in the flocks was incidental to and a natural consequence of good animal husbandry expected of a farmer. This court does not believe the benefit was beyond what would be reasonably expected of a chicken farmer.

See also, Bkrtcy., 61 B.R. 596.

Accordingly, and for the reasons stated the motion of Minn-kota Ag Products, Wolverton Farmer's Elevator and Woods Farmer's Elevator for administrative expense treatment is in all things DENIED. The Trustee is directed to release the funds remaining in accounts numbered 415927 and 87726 to the First American Bank of Rugby consistent with this court's previous order regarding relief from stay.

SO ORDERED.