In re INTERSTATE MOTOR FREIGHT SYSTEM, IMFS, INC., Debtors.

CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, Central States, Southeast and Southwest Area Health and Welfare Fund, an employee benefit plan, and Howard McDougall, Trustee, Plaintiffs,

v.

James ROBBINS, Trustee, National Acceptance Company of America, First National Bank of Boston, Toronto Dominion Bank, Continental Illinois National Bank and Trust Co., Old Kent Bank and Trust Co., Comerica Bank, the Indiana National Bank, Marine Midland Bank, Central National Bank of Chicago, Pittsburgh National Bank, the Colorado National Bank of Denver, the First National Bank of Louisville, the Travelers Insurance Company, Congen Five and Co., and Connecticut General Life Insurance Co., Defendants.

Bankruptcy Nos. HG 84 00880,
HG 84 00881.

Adv. No. 85 215.

United States Bankruptcy Court,
W.D. Michigan.

May 10, 1988.

Elizabeth Roberto, Douglas A. Firth, Russell N. Luplow, P.C., Bloomfield Hills, Mich., for plaintiffs.

Thomas W. Schouten, Dunn, Schouten & Snoap, Wyoming, Mich., for trustee.

James B. Frakie, Day, Sawdey, Flaggert and Porter, Grand Rapids, Mich., for Nat. Acceptance Co. of America.

C. Beth DunCombe, Joseph A. Fink, Dickinson, Wright, Moon, Van Dusen and Freemen, Detroit, Mich., for defendants Ins. Companies.

David Murphy, Hertzberg, Jacob and Weingarten, Detroit, Mich., for defendant Banks.

OPINION

LAURENCE E. HOWARD,
Bankruptcy Judge.

MOTION TO DISMISS COUNT II

All the defendants with the exception of James Robbins, trustee, and National Acceptance Company of America, have brought a motion to dismiss Count II of the plaintiffs' complaint. The moving defendants contend that the count must be dismissed because the court cannot grant the plaintiffs the relief they seek under it without violating sections 506(c) and 726(b) of title 11 of the United States Code. In an earlier decision in this adversary proceeding, *See* 71 B.R. 741 (Bankr., W.D.Mich.

1987), this court dismissed Count I, which sought relief under § 506(c), on the grounds that the plaintiffs lacked the requisite standing to proceed under § 506(c).

The plaintiffs are employee benefit funds which extended coverage to the debtors' employees. The moving defendants are banks and insurance companies which had given secured loans to the debtors ("Secured Lenders"). The plaintiffs allege that during the debtors' chapter 11 proceedings the debtors utilized the services of their employees to execute certain actions, such as marshalling of collateral, which benefited the Secured Lenders only. In utilizing the services of those employees to perform these services the debtors incurred obligations to the benefit plans. The debtors never paid these obligations. The plaintiffs contend in their pleadings that the debtors asserted they had no funds with which to pay these obligations. Nevertheless, the plaintiffs contend, the debtors and the Secured Lenders did pay some administrative claims in the chapter 11 proceedings. Upon conversion to chapter 7 the fund contributions were still unpaid. James Robbins, the trustee in bankruptcy, has no unencumbered funds with which to pay these benefit obligations. He has also declined to attempt to recover the value of these services from the Secured Lenders under 11 U.S.C. § 506(c). He has taken this decision upon the advice of his counsel who believe such an action would not succeed. (Transcript of June 17, 1987, at pages 21–27.) In response to the situation the plaintiffs brought a two count complaint against the Secured Lenders to recover the amount of the unpaid contributions. Count I, dismissed by this court by opinion and order of April 3, 1987, for lack of standing, prayed for relief based upon § 506(c). Count II, the subject of this motion, is predicated upon 11 U.S.C. § 105(a) and the common law theories of *quantum meruit* and unjust enrichment. The Secured Lenders have moved to dismiss Count II, arguing that the plaintiffs should not be allowed to do under § 105 that which they cannot do under § 506(c).

■ Just as in the motion to dismiss Count I, the issue remains fundamentally one of standing, i.e., may these plaintiffs bring this action. In ruling, the court is bound to "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). For the purposes of this opinion then, the court assumes that the unpaid benefit obligations were incurred when the debtors directed their employees to perform services of use only to the Secured Lenders. The court shall further assume that the Secured Lenders were thereby unjustly enriched by these services. Lastly, the court assumes that the plaintiffs have a legitimate chapter 11 administrative claim which was left unpaid by the debtors upon conversion to chapter 7 while some of the chapter 11 administrative claims were paid.

The plaintiffs have asked this court to use its equitable powers under 11 U.S.C. § 105(a) in order to allow them to recover from the Secured Lenders the health and pension fund contributions due from the debtors, which were incurred when the debtors performed services for the Secured Lenders. Section 105(a) provides in part that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

In deciding the defendants' motion to dismiss this adversary proceeding the court has drawn guidance from *Official Committee of Equity Security Holders v. Mabey*, 832 F.2d 299 (4th Cir.1987), in which the Fourth Circuit held that:

> While the equitable powers emanating from § 105(a) are quite important in the general bankruptcy scheme, and while such powers may encourage courts to be innovative, and even original, these equitable powers are not a license for a court to disregard the clear language and meaning of the bankruptcy statute and rules.

*Id.* at 302. In support of this proposition the Fourth Circuit cited *In re Chicago,*

*Mil., St. P. and Pac. R.R.*, 791 F.2d 524 (7th Cir.1986), which stated that:

> [T]he fact that a proceedings is equitable does not give the judge a free-floating discretion to redistribute rights in accordance with his personal views of justice and fairness, however enlightened those views may be.

832 F.2d at 302, quoting 791 F.2d at 528. The Fourth Circuit also relied upon *Guerin v. Weil, et al.*, 205 F.2d 302 (2nd Cir.1953), in which Judge Augustus Hand wrote that:

> Although it has been broadly stated that a Bankruptcy Court is a court of equity (citation omitted), the exercise of its equitable powers must be strictly confined within the prescribed limits of the Bankruptcy Act.

832 F.2d at 302, quoting 205 F.2d at 304. The Supreme Court has recently addressed this question, holding that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, —— U.S. ——, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). Taking these maxims as its guiding principles, the court must grant the motion to dismiss.

In *Mabey* the Fourth Circuit faced a tragic situation. The debtor, A.H. Robins Co., had manufactured the now infamous Dalkon Shield. Approximately 325,000 notices of claim were filed in that case by claimants who alleged injury from the Dalkon Shield. Among the injuries alleged was infertility. Many of the claims had been challenged; none had been estimated under 11 U.S.C. § 502(c) nor allowed under 11 U.S.C. § 502(a). Neither had a plan of reorganization been confirmed. Nonetheless the district court had approved a program under which reconstructive surgery or *in vitro* fertilization would be pro-

vided to these claimants. The rationale of the program was that it would allow participating claimants to elect to take a portion of their ultimate distribution now in the form of medical assistance instead of cash later. Claimants whose claims were eventually disallowed would not have to reimburse the fund for the services received. 832 F.2d at 301. The Fourth Circuit reversed the district court's approval of this program, holding that:

> The establishment and funding of the Program would benefit only certain unsecured holders of Dalkon Shield claims and that the program would afford preferential treatment to such claimants over other similarly situated unsecured Dalkon Shield claimants and over general unsecured creditors. The disbursement of such funds prior to the confirmation of a plan of reorganization for Robins would violate the Bankruptcy Code.

*Id.* at 300. Similar considerations compel dismissal here.

Basically, the plaintiffs here have alleged that the estate has a valid claim under 11 U.S.C. § 506(c)[1] against the Secured Lenders. They further allege that the trustee, for reasons unknown, has refused to pursue this claim. The plaintiffs ask that this court therefore allow them to proceed for their own sole benefit to recover the value of the § 506(c) claim from the Secured Lenders. In the earlier opinion rendered on Count I of this complaint the court held that the plaintiffs lacked the requisite standing to proceed under § 506(c). The court reasoned that since § 506(c) by its terms was limited to trustees and, by extension under 11 U.S.C. § 1107(a)[2], debtors in possession, the court could not confer standing upon an individual creditor. In *Mabey* approval of the program violated numerous express provisions of the Bank-

---

**1.** Section 506(c) provides as follows:

The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

**2.** Section 1107(a) provides as follows:

Subject to any limitations on a trustee serving in a case under this chapter, and to such

limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

ruptcy Code. This court believes it would be no less a violation of the Code to begin inserting additional words and clauses that Congress has not seen fit to put in the Code.

The plaintiffs argue that the court may nonetheless act under § 105(a) to do equity to them. However, the court was not unmindful of the equities of the situation in its consideration of the motion to dismiss Count I. The court weighed those equities and held it would be inequitable to allow the plaintiffs to proceed in their own names to the detriment of the estate and other creditors. Just as the program proposed in *Mabey* would afford preferential treatment to certain creditors over other similarly situated creditors, so a grant of standing to these plaintiffs would favor them over any other administrative claimant or unsecured creditors. The court cannot now use § 105(a) to do that which it held inequitable in ruling on Count I.

A basic premise of the opinion on Count I was the court's desire to preserve property of the estate, in the form of a § 506(c) action, for the benefit of the estate. The holding in Count I has been questioned on the grounds that the rule enunciated by this court is not necessary in order to prevent a valuable cause of action from being lost to the estate, and even more fundamentally, that the cause of action does not benefit the estate anyway. *See Guy and Mann v. Grogan, et al. (In re Staunton Industries, Inc.)*, 74 B.R. 501, 16 Bankr.Ct. Dec. 757 (Bankr.E.D.Mich.1987). Staunton has opined that:

> A strict standing rule is not necessary, however, to prevent the concern expressed in *Interstate Motor Freight System*. In order to prevent a valuable cause of action from being lost to the estate, all that is necessary is an opportu-

nity for the trustee to decide whether to bring the action.

*Id.* at 759. This would be an adequate response if the trustee were a private party representing only his own interests—to the extent he was mistaken as to whether to pursue a § 506(c) claim, his loss would be his own fault. But *Staunton* ignores the fact that the trustee is the representative of the creditors of the estate. If he fumbles, it is the creditors who suffer. And if a creditor represents that there is a valuable cause of action that the trustee refuses to pursue, the court's duty is not to let that action devolve upon one creditor alone, but to require the trustee to fulfill his fiduciary duty to the estate and its creditors.

This court's earlier opinion also held that allowing the plaintiffs to recover their expenses directly would violate 11 U.S.C. § 726(b)[3], which sets forth how property of the estate is to be distributed. The court reasoned that these plaintiffs should be treated the same as any other chapter 11 administrative expense claimant under § 726(b). (*See* 71 B.R. at 744–745.) This reasoning rests upon the premise that a § 506(c) recovery is property of the estate. *Staunton*, however, has questioned this premise, saying that "[i]t is not clear to this Court, however, why recovery of monies expended by third parties to protect the secured creditor's collateral should flow into the general estate to be subject to Sec. 726(b)." 74 B.R. 501, 16 Bankr.Ct.Dec. at 760.

It is this court's opinion that the the doubt expressed by the *Staunton* opinion is not supported by statutory construction and the overall structure of the Bankruptcy Code. The administrative expenses in question here are health and welfare and pension fund contributions which accrued when the debtors directed their employees

---

**3.** Section 726(b) provides as follows:

Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6) or (7) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this chapter under section 1112, 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

to perform services assumedly of value only to the Secured Lenders. These contributions accrued under the collective bargaining agreement between the debtors and their employees' union. These contributions are a claim against the estate. At § 506(c) the Bankruptcy Code vests the right of collection against the Secured Lenders in the estate, in the person of the trustee or the debtor in possession under § 1107(a). Nothing in § 506(c) says that although the right to recover is vested in the trustee or the debtor in possession they are not proceeding for the benefit of the estate. Nor does any section of Bankruptcy Code say that a recovery under § 506(c) is to be paid over whole and entire to the administrative claimant that performed those services. Section 726(b) addresses distribution to claimants and creditors and provides a certain priority for all administrative claimants under 11 U.S.C. § 503(b) and 11 U.S.C. § 507(a)[4] in a chapter 11 reorganization superseded by a chapter 7 liquidation. Neither § 726(b), § 507(a), nor § 503(b) recognize any distinctions between administrative claimants. Section 726(b) provides that all like claimants shall share pro rata. In an ideal world everyone who provides services or goods to a chapter 11 debtor would be paid in full up front, and the debtor would then seek reimbursement from the secured creditor. That would avoid this whole problem. However, many people extend credit to a chapter 11 debtor and go unpaid. That is why the Bankruptcy Code provides a priority for administrative claimants in § 503(b). No Code section distinguishes between administrative claimants who provided credit to the chapter 11 debtor and those who did not, e.g., a tort claimant, *see Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), nor between those whose credit benefited a secured creditor and those whose credit benefited the estate generally. The plaintiffs extended credit to the estate. The Code vests the recovery against the Secured Lenders in the estate. The Code directs that the estate shall be distributed

in certain priorities pro rata to all like situated claimants, with no distinctions drawn to favor any administrative claimant over another. To hold that a § 506(c) recovery is not property of the estate subject to § 726(b) but rather should go whole and entire to one administrative claimant is to enunciate a rule for which there is no authority in the Code and which is directly contrary to §§ 506(c), 503(b), 507(a) and 726(b).

■ The plaintiffs challenge the applicability of this reasoning to Count II of their Complaint. They point out, correctly, that § 726(b) is pivotal in the chain of reasoning: they lost on Count I in part because the court believed that the relief they sought would violate the hierarchy and equality provisions of § 726(b). The plaintiffs also observe, again correctly, that § 726 is titled "Distribution of property of the estate." Section 726 they argue, is inapplicable to this situation because the plaintiffs do not seek to obtain the distribution of property of the estate. Rather, they seek to obtain property of the secured lenders. (Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss for Failure to State a Claim, page 15.) The plaintiffs contend that since the property they seek to charge is liened property that would otherwise be distributed to the Secured Lenders it "is *not* property of the estate that would be available for distribution" under § 726. The plaintiffs do not cite to any authority for the proposition that property a debtor grants a security interest in ceases to be property of that debtor merely by virtue of that lien. Nor can the court think of any authority for that proposition. Indeed, were it true, no secured creditor would need to seek a lift of stay under 11 U.S.C. § 362(d) in order to obtain possession of its collateral, for the automatic stay of § 362(a) applies only to property of the estate, and by the plaintiffs' definition liened property is no longer property of the estate. The very existence of § 362(d), and the need for the procedure

4. Section 507(a) provides in part as follows: (a) The following expenses and claims have priority in the following order: (1) First, administrative expenses allowed under section 503(b) of this title.

it sets forth to allow secured creditors to obtain their collateral, refutes the plaintiffs' argument. Liened property is property of the estate at the inception of the case under 11 U.S.C. § 541(a), and remains property of the estate until that lien is foreclosed upon or the property is abandoned. If this property, which remains property of the estate, is not going to go to the Secured Lenders, the court cannot see how it can permit any distribution of this property other than as directed by § 507, § 726, or § 506(c).

The plaintiffs have further argued that in the event that the court believes § 726 applicable, its strictures should be waived because the court is too late to preserve the integrity of § 726. The plaintiffs have argued that many administrative claimants were paid by the debtors during their chapter 11 (e.g., salaries) and that certain § 506(c) claims were agreed to and paid by the Secured Lenders (e.g., utilities). The plaintiffs assert that these claimants have been paid in full, and that these payments have already created an unequal distribution of property of the estate to administrative claimants. Since these claimants were made whole, the plaintiffs ask to be allowed to proceed against the Secured Lenders in order to make themselves whole as well.

For the purposes of this opinion the court shall assume that some administrative claimants whose claims accrued in the chapter 11 were paid in full. The court shall further assume that this inequity was deliberately contrived by the debtor and the Secured Lenders. Nevertheless, the solution to such an inequitable situation would not be to permit the plaintiffs to proceed in their own name. If there has been an inequitable distribution in violation of the Bankruptcy Code, it is the duty of the trustee to investigate it and set the situation right. If he will not, the solution is not another violation of the Code, but rather to seek the replacement of the trustee with a trustee who will faithfully execute his duties to the estate.

In their brief in opposition to this motion the plaintiffs have cited many authorities to the effect that a creditor or a creditors committee may proceed with the permission of the court in other actions, e.g., the recovery of preferences or fraudulent transfers. The court has considered some of these authorities and has rejected them in its earlier opinion. *Cf. National Bank of North America v. Isaac Cohn Clothing Corp. (In re Isaac Cohn Clothing Corp.),* 39 B.R. 199 (Bankr.S.D.N.Y.1984); *In re Loop Hospital Partnership,* 50 B.R. 565 (Bankr.N.D.Ill.1985); *In re T.P. Long Chemical, Inc.,* 45 B.R. 278, 11 C.B.C.2d 1246 (Bankr.N.D.Ohio 1985); *Equitable Gas Co. v. Equibank N.A. (In re Mc Keesport Steel Castings),* 799 F.2d 91 (3rd Cir. 1986); and 3 L. King, Collier on Bankruptcy, ¶ 506.06 (15th ed. 1986). The court will not repeat the reasons it has given for that rejection. *See,* 71 B.R. at 743–744, n. 1 and 2. The plaintiffs concede that in the balance of the cases they cite for the proposition that creditors' committees have standing to pursue causes of action "the committees were acting on behalf of the general creditor body." (Plaintiffs' brief, page 9.) That distinction is a refutation of the very argument the plaintiffs attempt to support by citing these cases.

The plaintiffs in their brief have also articulated a novel interpretation of the Code. Under their interpretation there are two kinds of claimants: those who have benefited the estate and who may make a claim under § 503(b), and those who have benefited the secured creditors and who may make a claim against them under § 506(c). The court must reject this interpretation. As noted above, property which was liened to creditors was property of the estate under 11 U.S.C. § 541(a) at the inception of the case and remains such until the estate's interest is extinguished. Any charge recovered from that property must remain property of the estate. The Code provides only one way for a claimant who has provided services to be compensated, by filing a claim under § 503(b). Nowhere does the Code provide for dual and parallel claim procedures, and such a complicated scheme cannot be inferred without some authority for it in the Code.

The court is aware that a conflict persists between courts that allow an administrative claimant to proceed under § 506(c), *see, e.g., In re DLS Industries, Inc.*, 71 B.R. 679, 15 Bankr.Ct.Dec. 1057 (Bankr.D. Minn.1987), and those which do not, *see, e.g., In re Dakota Lay'd Eggs*, 68 B.R. 975 (Bankr.D.N.D.1987). The court is also aware that this conflict has been termed "more apparent than real." *See*, 6 Broken Bench Review, No. 3, at 32 (Summer 1987). But there is a real conflict here. In analyzing the situation the first premise must be that all administrative expenses should be paid by debtors in possession in the ordinary course of their business. Unfortunately, experience shows that not all debtors do this. Courts that allow a claimant to proceed directly under § 506(c) believe they have an answer to this failure: let the claimant proceed directly against the secured creditor for whose benefit the services were rendered. This solution, however, offers no help to the administrative claimant who cannot trace the benefits of his services or goods to the pocket of an identifiable secured creditor. Landlords, taxing authorities, professionals, and employees all contribute indirectly to the benefit of secured creditor, but the services they provide often do not justify a § 506(c) claim. *In re Staunton Industries; Central Bank of Montana v. Cascade Hydraulics and Utility Services, Inc. (In re Cascade Hydraulics and Utility Service Inc.)*, 815 F.2d 546 (9th Cir.1987). Such creditors would be left with an administrative claim against a usually depleted estate, reduced even further because its claims against secured creditors under § 506(c) would already have been usurped by other administrative claimants. Not only would permitting these plaintiffs to proceed draw an unjustified distinction between claimants, it would be allowing the use of powers created by the Bankruptcy Code for the benefit of one creditor alone, a result that is to be avoided. *See In re Groves Farms, Inc.*, 64 B.R. 276 (Bankr.S.D.Ind.1986); *Mellon Bank (East) N.A. v. Glick (In re Integrated Testing Products Corp.)*, 69 B.R. 901, 3 U.C.C.Rep.Serv.2d 1586 (D.N.J.1987).

Therefore, the court will grant the defendants' motion to dismiss Count II as to the moving defendants. The court is concerned, however, as to why the trustee has not pursued this cause of action. The court will *sua sponte* schedule a hearing to determine whether the matter should be pursued. This is a far more appropriate response to the situation than simply permitting the plaintiffs to proceed on their own. The court fully expects the plaintiffs to appear at this hearing and to substantiate their allegations that there is a viable § 506(c) claim here which should be pursued. The court also requests that the Estate Administrator (or Assistant United States Trustee if one is appointed by that time) appear at this hearing to give the court his opinion of the situation.