**In re MANUFACTURER'S SUPPLY COMPANY, Debtor.**

**Bankruptcy No. B88–2213.**

United States Bankruptcy Court,
N.D. Ohio, E.D.

Sept. 5, 1991.

Howard Sokolsky, Benesch, Friedlander, Coplan & Aronoff, Cleveland, Ohio, for debtor.

Thomas Pavlik, Cleveland, Ohio, for Trustee.

Brian A. Bash, Cleveland, Ohio, Trustee.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

### I.

The matter before the Court is the application of Michael Clark (Applicant) for a refund of Two Thousand Dollars ($2,000.00) advanced to Manufacturer's Supply Company (Debtor) to pay a retainer to Benesch, Friedlander, Coplan & Aronoff (Benesch). Upon review of the pleadings,

arguments of counsel and the record, generally, the following constitutes the Court's findings and conclusions:

## II.

On June 16, 1988, an involuntary Chapter 7 petition was filed against the Debtor. In order to facilitate the Debtor's representation, it was necessary for the Debtor to pay a retainer of $2,000.00 (Two Thousand Dollars) to Benesch. The Debtor apparently was unable to pay the retainer from its own assets, the Applicant, President of the Debtor corporation, personally paid the necessary retainer to Benesch. Pursuant to a fully disclosed agreement between the Applicant and Benesch, in the event that this Court awarded Benesch full payment for its fees and expenses, the $2,000.00 retainer would be refunded to the Applicant.

Subsequently, an order for relief under Chapter 7 of the Bankruptcy Code was issued on the involuntary petition on July 19, 1988. Benesch filed an application for allowance of compensation for services rendered and reimbursement for expenses on February 22, 1991. The Court on March 6, 1991, approved the application in the amount requested, reduced by the $2,000.00 retainer previously received by Benesch. The Applicant now seeks a reimbursement from the Debtor's estate of the $2,000.00 which he advanced. The Applicant contends that the $2,000.00 advance should be afforded an administrative expense priority as the advance was necessary and beneficial for the estate's retainment of counsel. The case trustee contends that the advance should be treated as a general unsecured claim.

## III.

The principle dispositive issue is whether a payment made to the legal counsel of an involuntary debtor by a third party during the "gap period" is entitled to an administrative expense priority.

## IV.

Section 503 of the Bankruptcy Code establishes criteria for the allowance of administrative expense claims:

§ 503. Allowance of administrative expenses.

(a) An entity may file a request for payment of an administrative expense.

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case:......[11 U.S.C. 503(b)(1)(A)]

Only debts that arise after the filing of the bankruptcy petition may be accorded administrative expense status. *In re Baldwin–United Corp.*, 43 B.R. 443, 453 (S.D.Ohio 1984). In order to qualify a claim for payment as an administrative expense the claimant must prove that the claim arose from a transaction with the debtor as opposed to the preceding entity and that such claim directly and substantially benefitted debtor's the estate. *In re United Trucking Service, Inc.*, 851 F.2d 159, 160 (6th Cir.1988). As noted above, Section 503 specifically excepts Section 502(f) involuntary "gap creditors" from administrative priority status. *See*, 11 U.S.C. 503(b); *In re Hanson Industries, Inc.*, 90 B.R. 405, 413 (Bankr.D.Minn.1988); *In re Dakota Lay'd Eggs*, 68 B.R. 975, 977 (Bankr.D.N.D.1987). Gap creditors are those who extend credit, lend money, or generally have claims which arise during the gap period between the filing of the involuntary petition and the entry of an order for relief. *2 Collier On Bankruptcy*, P303.36, at 303–127 (15th ed. 1990).

Once an involuntary petition is filed, an estate is thereby created. *See*, 11 U.S.C. 541(a). Until the order for relief is actually entered, a debtor may continue to operate and use property as if no case has been commenced. *See*, 11 U.S.C. 303(f). The ultimate effect is that while the case has been commenced, the estate does not pass from the debtor to the trustee's administrative control until the order for relief is granted. *See, In re Andreotti*, 16

B.R. 28 (Bankr.E.D.Cal.1981). Since the estate does not pass to the trustee's hand during this interim period, no administrative expenses can begin to accrue. Such gap claims, if allowed, are entitled to treatment as if they were claims which had arisen before the filing of the petition. H.R.Rep. No. 595, 95th Cong., 1st Sess. 354, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6310.

While section 503 of the Bankruptcy Code excepts gap creditors from administrative status, such creditors may receive a second priority status under section 502(f) of the Bankruptcy Code.

This section provides:

    (f) In an involuntary case, a claim arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee and the order for relief shall be determined as of the date such claim arises, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition. [11 U.S.C. 502(f)].

Section 502(f) is intended to protect creditors who deal with an involuntary debtor during the gap period, such as lessors, trade creditors and similar parties, consistent with section 303(f)'s specific authority allowing an involuntary debtor to conduct its business in an ordinary manner while its ultimate status is adjudicated. *See*, S.Rep. No. 95–989, 95th Cong., 2d Sess. 65, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5851. Section 507(a)(2) of the *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5851. Section 507(a)(2) of the Bankruptcy Code provides a second priority status to 502(f) gap creditors. *See*, 11 U.S.C. 507(a)(2).

### V.

■ This Court is mindful of the equitable concerns raised by the applicant. Nevertheless, the clear language of the Bankruptcy Code cannot be ignored. A gap creditor cannot avoid the preclusionary effect that section 503(b) has on gap claims regarding the allowance of administrative expenses. Section 503(b) of the Code provides the requirements for the treatment of administrative expense claims. This same section expressly prevents a gap creditor's claim from being regarded as an administrative expense. Regardless of the motivating reasons for advancing the Debtor the subject funds during the gap period, a gap creditor's claim cannot be accorded an administrative priority. *Dakota Lay'd Eggs, supra,* at 978. The claims of gap creditors are regarded as having accrued prior to the date of the filing of the petition and cannot be deemed as having occurred during the administration of the estate. *Id.;* 11 U.S.C. 502(f). Furthermore, since the $2,000.00 advance was not made in the ordinary course of the Debtor's business or financial affairs, the Applicant is not entitled to a second priority status pursuant to sections 502(f) and 507(a)(2) of the Bankruptcy Code. The Applicant's claim is nothing more than a general unsecured claim. *See*, 11 U.S.C. 502(f); 11 U.S.C. 507(a)(2).

### VI.

Accordingly, the Applicant's request for a refund of $2,000.00 advanced to the Debtor to pay a retainer to Benesch is hereby denied.

IT IS SO ORDERED.