In re SAN FELIPE @ VOSS, LTD., a Texas limited partnership, Debtor.

**METROPOLITAN LIFE INSURANCE COMPANY, Appellant,**

v.

**SAN FELIPE @ VOSS, LTD., Appellee.**

**Civ. A. No. H–89–4069.**

United States District Court, S.D. Texas, Houston Division.

June 4, 1990.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Glenn A. Portman, Johnson, Bromberg & Leeds, Dallas, Tex., for appellant.

Joseph Hill, Gage, Hill & Niehaus, David James Askanase, Hughes, Watters & Askanase, Houston, Tex., for appellee.

ORDER

HITTNER, District Judge.

This case represents an appeal from a November 6, 1989 order confirming a plan of reorganization. Judge William Greendyke entered the confirmation order in bankruptcy proceedings styled *In re San Felipe @ Voss, Ltd.*, Bankruptcy No. 87-11013-H5-11.

Appellant Metropolitan Life Insurance Company ("Metropolitan") has a first priority lien on the chapter 11 debtor's principal asset, an office building complex. Metropolitan now objects to the treatment of its allowed secured claim under the plan of reorganization that the bankruptcy court confirmed. As part of the plan, Warringtons plc ("Warringtons") is to buy the office building property and pay off Metropolitan's lien with a combination of (1) $750,000.00 in cash; (2) unrestricted Warringtons stock valued as of the confirma-

tion date at $597,721.00; (3) restricted Warringtons stock valued as of the confirmation date at $7,775,000.00; (4) access, as a form of limited guaranty, to stock valued as of the confirmation date at $836,979.00 [1]; and (5) a limited guaranty of a third party in the amount of $1,000,000.00.

The guaranties represent an attempt to ensure Metropolitan's realization of its allowed claim through the sale of the stock. The guaranties ostensibly seek to overcome restrictions on the major portion of the stock involved (the portion valued at $7,775,000.00). Under those restrictions, Metropolitan (1) cannot sell the stock for at least six months following the distribution date; (2) can trade the stock only on the London International Stock Exchange, and only by a securities brokerage firm designated by Warringtons; (3) cannot sell the stock to United States citizens; and (4) cannot realize any appreciation in value of the stock.

Metropolitan has framed numerous issues on appeal. The Court will consolidate them into three areas in an attempt to address the essence of Metropolitan's concerns as briefed and as argued at a hearing in open court on April 17, 1990. First, Metropolitan argues that the bankruptcy court's confirmation order violated an agreed stay order among the parties. Second, Metropolitan objects that the proffered payment package does not constitute the "indubitable equivalent" of its first priority lien under the Bankruptcy Code's cramdown provisions, and thus represents a fatal defect in the reorganization plan. Third, Metropolitan objects to the method by which the bankruptcy court determined the extent of Metropolitan's allowed secured claim.

## I. The effect on confirmation of the agreed stay order

Metropolitan argues that the bankruptcy court's confirmation of the plan

violated an agreed stay order between the parties which provided, among other things, that any plan of reorganization would pay off the full amount of Metropolitan's secured claim in cash. The bankruptcy court found that the debtor had not complied with the agreed stay order in at least this one respect. *See* Transcript of Confirmation Hearing Chapter 11 Plan at 144 (October 25, 1989) [hereinafter Confirmation Hearing].

Citing case law on the binding nature of settlement agreements,[2] Metropolitan argues that the bankruptcy court had no authority to confirm the plan in light of the debtor's breach of the agreed stay order. This Court finds that the existence of the agreed stay order would not preclude the bankruptcy court's confirmation of the plan at issue. The bankruptcy court *did* give effect to the agreed stay order: it found that the debtor had violated it, and that the agreed stay had thus been lifted. Confirmation Hearing, *supra,* at 144. The bankruptcy court determined further that in the absence of a foreclosure prior to its confirmation of a reorganization plan, the property remained in the bankruptcy estate, and that the bankruptcy court could properly include it in the plan. *Id.* Despite the lifting of a stay, agreed or otherwise, property of the debtor remains in the bankruptcy estate until removed by judicial process or abandonment. *See In re Interstate Motor Freight System,* 86 B.R. 500, 505 (Bankr.W.D.Mich.1988); *In re Watson,* 78 B.R. 267, 270 (Bankr.C.D.Cal.1987); 2 *Collier on Bankruptcy* ¶ 362.06, at 362–54 (15th ed. 1990). Nothing had occurred in this case to remove the property from the estate at the time of confirmation.

## II. Indubitable equivalence and the allowed secured claim

Metropolitan argues that the bankruptcy court erred in finding that the package of cash, stock, and guaranties constituted the

---

1. This stock would otherwise accede to liquidating trustee Joseph M. Hill, as the class VI creditor.

2. *E.g., Rodriquez v. VIA Metropolitan Transit Sys.,* 802 F.2d 126 (5th Cir.1986); *White Farm*

*Equip. Co. v. Kupcho,* 792 F.2d 526 (5th Cir. 1986).

indubitable equivalent of its allowed secured claim within 11 U.S.C. § 1129(b)(2)(A)(iii) (1988).

The parties agree that a determination of indubitable equivalence involves a mixed finding of law and fact. *See In re Pine Mountain, Ltd.*, 80 B.R. 171, 172 (9th Cir. BAP 1987). A reviewing court tests by a clearly erroneous standard the factual findings underlying a determination of indubitable equivalence, and then examines de novo whether based on those factual findings, the legal standard of indubitable equivalence has been met. *Id.*

If a reorganization plan proposes to satisfy an allowed secured claim with anything other than the secured creditor's collateral, a court must examine (1) whether the substituted security is completely compensatory and (2) the likelihood that the secured creditor will be paid. *See In re Sun Country Development*, 764 F.2d 406, 409 (5th Cir.1985) (citing *In re Murel Holding Corp.*, 75 F.2d 941 (2d Cir.1935)).

Several commentators have seemingly suggested that for purposes of cramdown, securities can never form the indubitable equivalent of a secured claim created through a lien on real property. *See 5 Collier on Bankruptcy* ¶ 1129.03[c], at 1129–75 (15th ed. 1989); Booth, *The Cram Down on Secured Creditors: An Impetus Toward Settlement*, 60 Am.Bankr.L.J. 69, 96 (1986); Klee, *All You Ever Wanted to Know About Cram Down Under the New Bankruptcy Code*, 53 Am.Bankr.L.J. 133, 156 (1979); Pachulski, *The Cram Down and Valuation Under Chapter 11 of the Bankruptcy Code*, 58 N.C.L.Rev. 925, 949 (1980). These commentators generally regard the use of securities issued in the reorganized company as "expos[ing] secured creditors to risks the drafters of the Code did not intend secured creditors to bear without so choosing." Booth, *supra*, at 96.

The Court disagrees with Metropolitan's argument, however, that securities can never constitute the indubitable equivalent of allowed secured claims. First, neither the language nor legislative history of section 1129(b)(2)(A)(iii) indicate that the equity securities of a third-party purchaser under a reorganization plan cannot form the indubitable equivalent of a secured creditor's allowed secured claim. Congress's use of the phrase "indubitable equivalent" in section 1129(b)(2)(A)(iii) itself indicates that a confirmable plan need not provide holders of allowed secured claims with strict cash equivalence. Metropolitan points to the statement in the statute's legislative history that "[u]nsecured notes as to the secured claim or equity securities of the debtor would not be the indubitable equivalent," 124 Cong.Rec. H11104 (daily ed. Sept. 28, 1978). This legislative statement is inapposite. This admonition applies to the use in cramdown of equity securities in the reorganized debtor, but not to the use of equity securities, as here, in a third-party purchaser. It is the use in cramdown of newly issued equity securities in the *reorganized debtor* to which the Code's prohibition, as well as the commentators' concerns, is directed. *See, e.g.*, Blum, *Treatment of Interest on Debtor Obligations Under the Bankruptcy Code*, 50 U.Chi.L.Rev. 430, 445 (1983) ("[I]n order to cram down a plan on dissenting secured creditors, any *new paper* of the *debtor* must be in the nature of an indebtedness, not an equity interest." (emphasis added)).

Second, several courts have held that the indubitable equivalence standard contemplates nonmonetary satisfaction of claims. The Fifth Circuit has noted that the conclusion by some courts that "a transfer of property satisfies the 'indubitable equivalent' standard only if that property is the equivalent of cash" is incorrect. *In re Sandy Ridge Development Corp.*, 881 F.2d 1346, 1350 n. 11 (5th Cir.1989) (citing *In re Future Energy Corp.*, 83 B.R. 470, 495 (Bankr.S.D.Ohio 1988)). In an earlier case, the Fifth Circuit upheld a bankruptcy court's confirmation of a plan that satisfied an allowed secured claim (a claim created by a first lien on real property) with a group of promissory notes. *See In re Sun Country Development*, 764 F.2d at 408–09. Thus, even though no reported case has apparently permitted the satisfaction of a claim arising from a first lien on real prop-

erty through a transfer of securities,[3] section 1129(b)(2)(A)(iii) contains no requirement of strict cash equivalence.

Third, not all securities are so inherently unstable and illiquid as to diminish the likelihood of a secured creditor's obtaining complete payment. In a particular case, a bankruptcy court should look to the stability and liquidity of the proffered securities. *Cf. In re B.W. Alpha, Inc.,* 89 B.R. 592, 596 (Bankr.N.D.Tex.) (noting the illiquidity of a hotel property proposed to be transferred under a reorganization plan), *aff'd,* 100 B.R. 831 (N.D.Tex.1988); *In re Sandy Ridge Development Corp.,* 77 B.R. 69, 74–75 (Bankr.M.D.La.1987) (noting a need to look to the liquidity of commodities and the established nature of the market), *rev'd,* 881 F.2d 1346 (5th Cir.1989).

In this case, the bankruptcy court carefully examined the financial stability of Warringtons and its securities. The bankruptcy court found that the Warringtons stock was quoted on the London International Stock Exchange, and had been so listed for 25 years. Findings, *supra,* at 4. Only companies that can show substantial stability, including a demonstration of consistent profits for the previous five years, can meet that exchange's listing requirements. *Id.*

The bankruptcy court also determined that Warringtons had assets in excess of the equivalent of approximately $45,000,000, and fixed the earnings for Warringtons' two previous fiscal years at $1,702,360 and $3,533,200. *Id.* The bankruptcy court found further that the stock at issue had remained stable in value during the previous two years, despite "traumatic downturns" in the market generally. *Id.* at 4–5. According to the bankruptcy court's calculations, as of the date of confirmation, the stock was trading at a price close to its two-year low (98 pence), and the net asset value of the stock to be transferred was approximately 135 pence. *Id.* at 5.

The bankruptcy court also ascertained that the conditions that sales of the stock be effected by a particular brokerage house and that the stock not be sold to United States purchasers would not affect the stock's liquidity. *Id.* at 5. According to the bankruptcy court's findings, the broker would be able to liquidate the stock within four weeks of a sale order by Metropolitan. *Id.*[4]

Based on the uncontroverted evidence before the bankruptcy court—evidence adduced from a vice chairman of Warringtons, a securities broker from a prominent United States brokerage house, and Warrington's principal legal counsel—this Court cannot hold that these factual findings are clearly erroneous.

■ If the securities at issue have a history of stability and liquidity, a bankruptcy court can guard against any potential instability in value or in the securities market generally through the use of a margin between the value of the securities and the secured creditor's allowed claim. *Cf. In re Future Energy Corp.,* 83 B.R. 470, 495 n. 39 (Bankr.S.D.Ohio 1988) (noting the possibility of designing a plan calling for a transfer of property when the plan provides for a sufficient "margin for error"). Taking into consideration not only the stock transferred to Metropolitan but also Metropolitan's potential recourse to the $836,979 in stock provided as a limited guaranty, the bankruptcy court found that the reorganization plan in this case provided Metropolitan with a 32.8 percent mar-

---

**3.** A bankruptcy court in Ohio held in 1988 that common stock in a Krutex Energy Corporation—a stock that was not listed on an established stock exchange, that could not be traded freely, and that was subject to great fluctuations in value—could not serve as the indubitable equivalent of allowed secured claims. *In re Future Energy Corp.,* 83 B.R. 470, 495–96 (Bankr.S.D.Ohio 1988). As discussed below, the securities at issue in this case are easily distinguishable from those involved in the *Future* *Energy* case. Furthermore, the *Sandy Ridge Development* decision indicates that the *Future Energy* court used an improper legal standard in evaluating the sufficiency of substituted security.

**4.** The bankruptcy court noted that the six-month restriction on sale of the stock was necessary to guard against "a precipitous dumping of the stock on the market."

gin.[5] The bankruptcy court calculated this margin on the basis of an allowed secured claim of $7,577,000.00. Considering the evidence placed before the bankruptcy court as to the stability and liquidity of the securities at issue, the bankruptcy court did not err in finding that a margin of nearly one-third over the amount of the allowed secured claim would be more than adequate to guard against any depreciation that might realistically occur over a six-month period.

■ However, Metropolitan also questions the valuation of the property on which the bankruptcy court based its calculation of the $7,577,000.00 allowed secured claim. Metropolitan argues that in valuing its allowed secured claim, the bankruptcy court should have looked to one of the two purchase prices offered by alternative potential purchasers under the reorganization plan: one of $9,400,000.00 and another (that of Warringtons) of $11,100,000.00.

The Court finds that the valuation question is not dispositive. Pursuant to a stipulation before the bankruptcy court, Metropolitan's highest potential allowed secured claim was $9,123,000.00. In finding that the payment package constituted the indubitable equivalent of Metropolitan's allowed secured claim of $7,577,000, the bankruptcy court made an alternative finding that "[e]ven if [Metropolitan's] claim is $9,123,093.00 and is determined to be a fully secured claim, the Court finds that [Metropolitan] is receiving the indubitable equivalent of its claim." Findings, *supra*, at 4.

The bankruptcy court did not err in reaching this alternative finding. Taking into account the limited guaranties under the plan, the payment package provided Metropolitan with a 21 percent cushion over the highest possible calculation of Metropolitan's allowed secured claim. Again, considering the uncontroverted evidence as to the stability and liquidity of the securities at issue, the Court finds that a 21 percent margin would be more than adequate to guard against any depreciation that might realistically occur over a six-month period.

Finally, a construction of section 1129(b)(2)(A)(iii) as forbidding absolutely the use of securities to pay off allowed secured claims would conflict with the Bankruptcy Code's grant to bankruptcy courts of the ability to restructure plans of reorganization that satisfy both the claims of creditors and the best interests of debtors. *See In re Briggs Transportation Co.*, 780 F.2d 1339, 1348–49 (8th Cir.1986); *cf. In re Timbers of Inwood Forest Associates*, 808 F.2d 363, 374 n. 1 (5th Cir.1987) (en banc) (Clark, C.J., concurring) (noting the en banc majority's apparent rejection of the *Briggs* rationale), *aff'd sub. nom. United Savings Association v. Timbers of Inwood Forest Associates*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). Bankruptcy courts must have a degree of flexibility in their administration of such plans. *See NLRB v. Bidilsco & Bidilsco*, 465 U.S. 513, 525, 104 S.Ct. 1188, 1195–96, 79 L.Ed.2d 482 (1984). When securities to be used in a reorganization plan have a history of stable value, and when the plan provides a sufficient margin between the value of the securities and the creditor's allowed secured claim, the plan proponent can meet its burden of showing indubitable equivalence. *Cf.* Fortgang & Mayer, *Valuation in Bankruptcy*, 32 UCLA L.Rev. 1061, 1122 (1985) (placing proper emphasis on the debtor's ability to "prove that the substituted collateral is worth as much as the original collateral").

The Court holds that despite the restrictions on a large portion of the securities at issue, the bankruptcy court properly confirmed the instant plan of reorganization, based on the plan's provision of a sufficient margin between the payment package offered to Metropolitan and the amount of Metropolitan's allowed secured claim. This margin, which at minimum equals 21 percent, guarded against potential depreciation in the value of the stock involved so as

---

**5.** The Court agrees with the bankruptcy court's determination that for these purposes, the additional $1,000,000 guaranty in favor of Metropol-

itan was mere "icing on the cake." Confirmation Hearing, *supra*, at 145.

to ensure in all likelihood that Metropolitan would be compensated in full.

III. Other issues on appeal

As the Court has determined that the reorganization plan provided a margin sufficient to ensure in all likelihood Metropolitan's receipt of an allowed secured claim of $9,123,093.00, the Court need not reach Metropolitan's contentions that the bankruptcy court erred in fixing the amount of Metropolitan's allowed secured claim at $7,577,000.00.

Furthermore, as this Court has determined that the bankruptcy court did not err in finding that the payment package constituted the indubitable equivalent of Metropolitan's augmented allowed secured claim, the Court declines to address Metropolitan's claims that the plan as proposed was not "fair and equitable" within 11 U.S.C. § 1129(b)(1), (b)(2)(A); that it was not proposed in good faith under 11 U.S.C. § 1129(a)(2); that it does not comply with the absolute priority rule as required by 11 U.S.C. § 1129(b); that it unfairly discriminates against Metropolitan in violation of 11 U.S.C. § 1129(b)(1); and that it is not feasible within 11 U.S.C. § 1129(a)(11). *See In re Sandy Ridge Development Corp.*, 881 F.2d at 1350; *In re Sun Country Development*, 764 F.2d at 408–09.

Based on the foregoing, the Court AFFIRMS the order of the bankruptcy court that confirmed the reorganization plan at issue.

This order terminates this appeal.