In re **FORREST MARBURY HOUSE
ASSOCIATES LIMITED
PARTNERSHIP, Debtor.**

David B. **TATGE,** Trustee, Plaintiff,

v.

**AMERICAN SECURITY BANK,**
et al., Defendants.

**Bankruptcy No. 90–00256.
Adv. No. 91–0034.**

United States Bankruptcy Court,
District of Columbia.

Feb. 18, 1992.

David B. Tatge, Trustee for plaintiff.

Lawrence D. Mungin, for defendants.

## DECISION CONCERNING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

S. MARTIN TEEL, Jr., Bankruptcy Judge.

The plaintiff, the chapter 7 trustee of the debtor's estate, seeks to invoke 11 U.S.C. § 724(b) to recover the $73,838.39 attributable to the defendant District of Columbia's pre-petition tax lien on the debtor's real property. The defendant bank, which held a claim secured by a deed of trust junior to the District's tax lien, paid the $73,838.39 amount of that lien to the District on March 25, 1991. Subsequently, the defendant trustees under the deed of trust sold the real property at foreclosure sale. The plaintiff seeks to impose liability against the defendants under § 724(b) in conjunction with 11 U.S.C. §§ 542, 549 and 550. The court will grant summary judgment in favor of the plaintiff.

### Facts

The facts are not in dispute. The debtor, Forrest Marbury House Associates Limited Partnership, owned real property known as Forrest Marbury Court which is located at 3348–50 M Street, N.W. in this district. On April 4, 1990, the debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code. The bank held a claim secured by a deed of trust against the real property to secure a construction loan in the amount of $6 million. On February 7, 1991, the court entered an order granting the bank relief from the automatic stay to foreclose its security interest against the real property under 11 U.S.C. § 362(d)(2). On the same date, the court converted the case to a case under chapter 7. The plaintiff, David B. Tatge, is the duly qualified chapter 7 trustee, appointed by the United States Trustee.

As of March 25, 1991, the District held a pre-petition tax lien against the real estate in the amount of $73,838.39. On that date, South Charles Realty Corp., as agent for the bank, made a payment including the amount of that tax lien to the District on behalf of the bank. The defendants, Stuart Levin and Joseph Perras, were appointed substitute trustees under the deed of trust. On April 4, 1991, they sold the real property at foreclosure sale for $4,075,000 pursuant to a credit bid by the bank, far less than the bank's total claim.

Paragraph 11(b) of the deed of trust stated that "upon any sale of the Premises ..., the trustees shall apply the [proceeds of sale] in the following order of priority ... (b) second, to discharge all liens of record, taxes, levies and assessments, with costs and interest if they have priority over the lien of this Deed of Trust ...." The unpaid District tax lien had priority over the bank's deed of trust as a matter of law. Paragraph 12 of the deed of trust provided that upon payment of any tax liens the lien in favor of the bank would increase by a like amount. None of the defendants question that administrative expenses in this case will exceed the amount that was paid to the District pursuant to its tax lien.

On May 3, 1991, the plaintiff commenced this adversary proceeding.

### DISCUSSION

Section 724(b) of the Bankruptcy Code (11 U.S.C.) provides:

(b) property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed—

(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

(2) second, to any holder of a claim of a kind specified in § 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;

(3) third, to the holder of such tax lien, to the extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distribut-

ed under paragraph (2) of this subsection;

. . .

*District of Columbia's Liability*

■■■ The District argues that § 724(b) is inapplicable here because the court's order granting the bank relief from the automatic stay effectively removed the property from the estate under the supervision of the court. The District premises this on the court's finding under § 362(d)(2) that the debtor did not have equity in the real property in granting relief from the automatic stay. Based on this premise, the District further argues that the proceeds of sale resulting from the foreclosure and the bank's payment to the District were not assets of the estate.

In the District's view, § 362(d)(2) relief is indistinguishable from abandonment relief. The District argues that because the property here was not "property" in which the estate had an interest within the terms of § 724(b), it was no longer available for sale by the trustee and therefore was not governed by § 724(b). The District's argument rests on an erroneous premise. Until the real property was sold at foreclosure sale, the real property remained property of the estate. *In re San Felipe Voss, Ltd.*, 115 B.R. 526, 528 (S.D.Tex.1990); *In re Interstate Motor Freight System, IMFS, Inc.*, 86 B.R. 500, 505 (Bankr.W.D.Mich. 1988). The payment to the District of the amount secured by its tax lien was made prior to foreclosure, when the realty was still property of the estate. It can readily be seen that the payment thus represents proceeds of the property in which the estate had an interest within the terms of § 724(b). The funds used to make the payment may have been the bank's, but they were used to enjoy having ownership of the property free of the District's $73,838.39 tax lien. It was the value of the realty of at least $73,838.39 that allowed the District to be in the position to be the recipient of the $73,838.39, an amount the bank would not have had an incentive to pay absent such value. Thus, the payment represents proceeds of the property. Accordingly, the District is obligated to pay those proceeds to the trustee.

Had the real property been abandoned, the District would be entitled to the payment in discharge of its lien. *In re K.C. Mach. & Tool, Co.*, 816 F.2d 238 (6th Cir. 1987). But the property not having been abandoned, any realization of the amount secured by the District's tax lien represented proceeds of the property, whether or not there was equity in the property above existing liens.

Any other interpretation would frustrate the operation of § 724(b). Under the logic of the District's view, a mortgagee could pre-pay a tax lien in advance of any sale and eliminate the trustee's § 724(b) rights even when the trustee is able to sell the property. Such a result would clearly be contrary to the intent of § 724(b). That the trustee faces little prospect of being able to sell the property ought not alter the character of an advance payment of the tax lien as constituting proceeds subject to § 724(b). No one can state as an absolute that the trustee could never have effected a sale. But more importantly, during the time the property remains property of the estate, any payment of the tax lien is a realization of the value of the estate subject to that tax lien within the contemplation of § 724(b).

That the amount attributable to the District's tax lien was realized without a disposition by the trustee is irrelevant. As *K.C. Mach.* demonstrates, the question whether the trustee can succeed in making a disposition of the property is a distinct question from whether § 724(b) rights exist in the property. In *K.C. Mach.* the trustee attempted unsuccessfully to make a sale free and clear of the liens and the court ordered an abandonment of the property. However, the property was sold free of the tax liens and the proceeds were placed in escrow pending an appeal of the abandonment order. Because the trustee's § 724(b) rights promised a benefit to the estate and therefore made it in the interest of the estate to retain the property, the court of appeals ruled that abandonment was not appropriate, despite the lack of any equity in the property. Accordingly, the chapter 7 trustee in *K.C. Mach.* was able to assert

his § 724(b) rights against the proceeds of the sale.

The District seems to argue as well that the payment to it was merely incident to the foreclosure sale which terminated any interest the estate had in the property. Viewed as incident to the foreclosure sale, the District argues the proceeds ought not to be viewed as property of the estate. This argument disregards that the payment to the District was made before the foreclosure sale. For whatever reason, the bank chose to make the payment out of its own funds instead of using foreclosure sale proceeds.

Even if the District had not been paid in advance of the foreclosure sale, the terms of the deed of trust required that the tax lien be paid out of the proceeds of the foreclosure sale. Accordingly, had the tax lien not been paid in advance, the proceeds of the foreclosure sale would have included an amount equal to the pre-petition tax lien of the District. As explained in greater detail with respect to the claims against the bank, those proceeds would be proceeds of property in which the estate had an interest at the time of the foreclosure sale. It was only after the foreclosure sale that the estate's interest in the property was terminated.

The plaintiff argues that he succeeded to the District's lien rights as property of the estate upon the conversion of the case to Chapter 7. I need not reach this contention. It suffices that the plaintiff could assert, on behalf of the estate, the provisions of the deed of trust (which protected both the debtor and the bank) requiring that proceeds of a foreclosure sale be paid first to the District.

Accordingly, the District received funds that rightfully belonged to the chapter 7 trustee under § 724(b). The trustee argues that the transfer to the District was an unauthorized post-petition transfer and thus avoidable under § 549 and recoverable

from the District under § 550, alternatively, under § 542. The District does not dispute its liability if § 724(b) applies and I will accordingly grant judgment against it.

### Claims Against Bank and Deed of Trust Trustees

Presumably, the District will make payment of any judgment entered herein. As the plaintiff points out, however, it is the bank which improperly made payment to the District and he should not have to face the risk of any theoretical possibility of insolvency of the District or other difficulty or delay in collecting from the District. Accordingly, it is necessary to address as well the plaintiff's claims against the bank and the trustees under the deed of trust.

The bank treats the payment to the District as effective to release the pre-petition tax lien. However, when the bank paid the District the amount of the pre-petition tax lien in advance of foreclosure, assuming the payment was effective, it thereby increased the amount of the bank's lien by a like amount. Deed of Trust, par. 12. In so doing, the bank effected a transfer to the trustees under the deed of trust of that value of the property which had been necessary to satisfy the tax lien. Upon foreclosure, the proceeds were attributable first to the amount of the previously paid tax lien. The trustees under the deed of trust ought to have paid that amount to the chapter 7 trustee as rightfully his under § 724(b).[1]

Moreover, the whole premise of the bank's argument is that its payment to the District was effective to release the tax lien. This premise is erroneous: the payment to the District, at the option of the chapter 7 trustee, was ineffective to discharge the tax lien because the payment ought to have been made to the chapter 7 trustee, who was entitled to any payment of the tax lien during the time the realty remained property of the estate. Thus, the tax lien had not been discharged as of the

---

1. This assumes that administrative claims at that juncture exceeded the tax lien. Even if they did not, § 724(b) requires that the funds be available for distribution under § 724(b) at the close of the case. To avoid interest or penalties accruing on the tax lien, the bank as junior lienor need only have paid the lien amount in trust to the trustee pending determination of the proper distribution under § 724(b).

foreclosure sale and the proceeds by the terms of the deed of trust ought to have been distributed, in payment of the tax lien, to the chapter 7 trustee under § 724(b).

Whether the payment to the District is viewed as effective or ineffective, the chapter 7 trustee is entitled to recover the sales proceeds equal to the District's pre-petition tax lien.

■ First, he is entitled to recover from the trustees under the deed of trust. If the payment to the District was effective, as the defendants assert, to release the tax lien, the trustees under the deed of trust are liable under §§ 549 and 550. There was an unauthorized transfer to them of the estate's property (in the amount of the value of the property equal to the tax lien when the payment to the District was made). That unauthorized post-petition transfer is avoidable under § 549 with the right of recovery against the trustees as the transferees under 11 U.S.C. § 550. If the payment was ineffective, the lien was still on the property and the plaintiff is entitled to turnover based on breach of the trustees' obligation to pay the tax lien under the terms of the deed of trust and § 724(b).

■ The bank itself is also liable under §§ 549 and 550 if the payment to the District was either effective or ineffective to release its tax lien. If the payment was *effective*, the amount the bank realized from the foreclosure sale was attributable (to the tune of $73,838.39) to the paid tax lien. Those proceeds of the tax lien belonged to the trustee under § 724(b) and were transferred without authority to the bank as recipient of the foreclosure sale proceeds. The transfer being avoidable under § 549, the bank is liable under § 550 as a transferee. The bank's payment as transferee to the District is no different than any other unauthorized transferee's payment to an unauthorized third party recipient in exchange for an unauthorized post-petition transfer of estate property.

If the payment was *ineffective* to release the District's tax lien, the foreclosure sale proceeds included amounts attributable to the lien and they were distributed to the bank without authorization, in light of § 724(b), thus subjecting it to liability under §§ 549 and 550. The bank makes an argument, similar to the District's argument already rejected, that the interest of the debtor and the property to which the estate succeeded was one of an owner holding an equity of redemption and that foreclosure ended the debtor's equity of redemption immediately upon the falling of the gavel. In other words, the bank argues, the only potential remaining interest of the estate would be in a distribution of surplus funds, if any. This argument ignores that pursuant to the terms of the deed of trust the tax lien was payable out of the proceeds of the foreclosure sale. As in *K.C. Mach.* the proceeds of sale included amounts attributable to tax liens. In *K.C. Mach.* the property was sold free and clear of liens under 11 U.S.C. § 363. Here the property was sold pursuant to a provision of the deed of trust that dedicated the proceeds of sale first to payment of the tax lien. They thus constituted proceeds of property of the estate attributable to the tax lien. The deed of trust thus fixed the District's tax lien on the sales proceeds. The foreclosure sale proceeds, to the tune of $73,838.39, were thus property of the estate subject to the tax lien within the meaning of 11 U.S.C. § 724(b).

Whether the foreclosure sale would have cut off the application of § 724(b) in the absence of such a provision in the deed of trust is not a question this court must address. As stated in *K.C. Mach.*, 816 F.2d at 244, "§ 724(b) subordination of tax liens to administrative expenses creates value or benefit to the debtor's estate for purposes of § 554(b) abandonment proceedings"; as long as there are proceeds of the sale of the estate's property that are attributable to the tax lien, they are of value to the estate by reason of § 724(b) and ought not be abandoned.

Both the District and the bank correctly observe that § 724(b) is merely a distribution scheme providing for the distribution of property of the estate. As stated in *K.C. Mach.*, 816 F.2d at 245, "the language of § 724(b) providing that 'property in

which the estate has an interest ... shall be distributed' does not make § 724(b) distribution of all property in the estate at the time of conversion to chapter 7 liquidation mandatory. Rather, § 724(b) merely mandates a particular method of distribution of what property is left in debtor's estate at the time of distribution." But upon foreclosure, $73,838.39 of the proceeds of the sale were attributable to the District's lien. The proceeds of the lien were still property of the estate distributable in accordance with the distribution scheme of § 724(b). That is the precise holding on the facts of *K.C. Mach* (where the property was sold and the proceeds held in escrow by the bank pending a determination of whether the trustee had been properly ordered to abandon the estate's interest in the property).

The bank's invocation of the general rule that secured creditors may not be saddled with the cost of administration is simply inapposite here. The bank is being sued on the basis that it made an improper payment of proceeds of property of the estate to the District. It, and not the trustee, ought to face the risks that inhere in obtaining repayment from the District. The bank is correct that if the District pays the disputed amount to the trustee, that will end any liability which the bank might have. However, until the trustee receives full payment from the District, the bank remains liable as well. The trustee may find it easier to execute on the bank than on the District. Were the judgment awarded against only the District, the District might appeal and not end up making payment as promptly as the trustee might have obtained were he free to pursue the bank as well.

The bank argues as well that the funds used to pay the tax lien were the bank's own funds and hence were not property of the estate. This observation, correct though it may be, does not alter the fact that the funds received by the District were § 724(b) proceeds of property of the estate. Nor is the court persuaded by the bank's arguments that application of § 724(b) on these facts works a hardship and injustice violative of the due process clause of the Fifth Amendment.

### *Plaintiff's Entitlement to Interest*

None of the defendants contest that the plaintiff trustee is entitled to pre-judgment interest, as sought in his motion. However, the parties have not addressed the date such interest should start to accrue or the appropriate rate of interest.

The plaintiff filed a motion in the main case (Docket Entry No. 112) on March 29, 1991, requesting an order against the bank that $73,838 of the proceeds of the forthcoming foreclosure sale be paid to him or, alternatively that the District refund the $73,838 to him within 10 days of the foreclosure sale. On April 3, 1991, the court denied the motion on procedural grounds, but the plaintiff's demand that he was entitled to the proceeds of the lien was clear. On April 4, 1991 the plaintiff demanded the trustees under the deed of trust to pay him the $73,838. In these circumstances, the date of demand shall be treated as April 4, 1991, the day of the foreclosure sale. The date of demand is the appropriate date from which interest should run. *White v. Bradford (In re Tax Reduction Institute)*, 138 B.R. 325 (Bankr.D.D.C.1991). As in *Tax Reduction Institute*, the court will treat the trustee as being content to accept the ready adoption of a fixed statutory rate of interest, the rate in effect under 28 U.S.C. § 1961(b) on April 4, 1991. After entry of judgment, interest shall run on the entire judgment amount as provided by law.

An appropriate order follows.