**In re KELLER, Rodney B., Debtor.**

No. 91–01977–R41.

United States Bankruptcy Court,
E.D. Washington.

Aug. 10, 1993.

Allan Galbraith, Card & Galbraith, Wenatchee, WA, for debtor.

Robert G. Dodge, Wenatchee, WA, for Andre Partnership.

Steven Vlcko, Tri–Cities, WA, for Shirley Keller.

Gary Farrell, Spokane, WA, for U.S. Trustee.

## MEMORANDUM OPINION

JOHN A. ROSSMEISSL, Bankruptcy Judge:

### JURISDICTION

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(a) (the district courts shall have original and exclusive jurisdiction of all cases under Title 11), 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district), and Local Rule 29 of the United States District Court for the Eastern District of Washington (referring all cases under Title 11 and all proceedings arising under Title 11 or arising in or related to cases under Title 11 to the bankruptcy judges of this district).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

### FACTS

On August 20, 1980, Rodney ("Debtor") and Shirley ("Creditor") Keller entered into a real estate contract to sell real property ("Broadview") to Ronald and Judith Andre, ("Andre"). In 1985, the Kellers filed for divorce. The parties entered into a property settlement agreement (the "Settlement") which was incorporated into the dissolution decree. Under the Settlement debtor received Broadview subject to a security interest granted to Creditor. This collateral interest was evidenced by a duly recorded Seller's Assignment of Contract and Deed in the Andre contract which secured debtor's obligation to Creditor defined in the Settlement. Under the Settlement, Debtor was to pay the Creditor $12,000 a year for thirty years with no interest (the "Annual Payment"). In the event of an early pay off of the Andre contract, the then remaining balance of Annual Payments due Creditor would be paid in full. The Settlement also provided that payments to Creditor would terminate on her death or remarriage. Finally, the parties also agreed to make reciprocal wills providing that, upon the death of one party, the survivor received the Andre contract. Debtor was not represented by counsel when the Settlement was negotiated. Debtor has not defaulted on the Settlement, as he has made all required Annual Payments.

Subsequent to the divorce, Andre converted the property from agricultural purpose to a residential development. Debtor began to convey, by warranty deed, parcels of Broadview which Andre had developed and sold to third parties (the "Deedholders"). At least eighteen such properties were so conveyed. These conveyances to the Deedholders were made by Debtor and Andre, for some reason, without the knowledge or participation of Creditor. A title company was persuaded to insure around Creditor's interest in these properties, backed presumably by indemnity agreements from either Debtor, Andre or both. Creditor was never asked to release her security interest in the parcels deeded. Neither the real estate contract nor the Settlement provide that Creditor must grant partial releases of property from her security interest.

At some point, Creditor became aware of the conveyances to the Deedholders and made inquiry through counsel regarding the potential deterioration of her security. After a number of inquiries went without response, Creditor threatened to commence a lawsuit to determine her rights in the conveyed parcels against her ex-husband, Andre and the Deedholders, unless she was immediately paid the balance due under the Settlement, at the time some $288,000.

This threat precipitated Debtor's filing for Chapter 11 protection on June 19, 1991. At the time of filing, Debtor's schedules

indicated that the estate was solvent.[1]

Debtor's original plan was to value the Creditor's claim at the present value of a stream of 24 annual payments of $12,000 discounted at an appropriate interest rate and then cash Creditor out at that reduced value. Creditor opposed this, and the court valued her claim at $276,000.[2] That decision has been appealed.

Debtor then amended its original plan. Instead of cashing out the claim at a discounted value, the amendment proposed continuing the Annual Payments, but also included an injunction which would bar Creditor from pursuing her claims against the Deedholders. On November 5, 1992, this court denied confirmation of this first amended plan of reorganization because the injunction violated 11 U.S.C. § 524(e). The court found that § 524(e) precluded Debtor from enjoining Creditor's efforts to establish the liability of her claim against the Deedholders property.

Debtor then filed a second amended plan (the "Plan") which required Creditor to release her security interest in any properties already sold to the Deedholders, and compelled her to continue to execute partial releases of her security interest in Broadview so that Andre could continue to develop and sell property. Creditor would be entitled to retain a security interest in Broadview sufficient to maintain a collateral cushion equal to one and one half times the value of her claim. Additionally, in exchange for the release of her security interest, Debtor would obtain an annuity[3] to further assure the Annual Payments.

Creditor voted against the Plan and contested confirmation. After hearing, the court took the matter under submission.

## DISCUSSION

Creditor asserts that the Plan cannot be confirmed for the following reasons: 1) the Plan violates § 1129(b)(2)(A) by not allowing Creditor to retain the lien securing her claim; 2) the Plan fails to provide Creditor with the indubitable equivalent of the secured value of her claim; 3) the Plan violates the full faith and credit clause of the Constitution because it alters the rights of the parties arising under their state dissolution decree; and 4) the Plan does not satisfy § 1129(a)(1) because forcing Creditor to release her security interest in the Deedholder's properties violates § 524(e).

Among the other requirements for confirmation, a plan can be "crammed down" on a dissenting class of creditors only if the plan satisfies one of the subsections of § 1129(b)(2)(A).[4] Creditor contends that

---

**1.** Debtor's schedules filed July 3 indicated secured claims of $298,347.00, total debts of $300,-612.49, real property valued at $699,229, and total assets of $711,529.

**2.** An annual payment had been made in the interim and credited.

**3.** The Plan provides: "as additional collateral ... the Debtor will obtain a commercial annuity provided by reputable company authorized to do business in the State of Washington which contractually obligates itself to pay Shirley Keller the sum of $12,000 on November 1 of each year, but which is subject to termination according to the terms of the Shirley Keller Obligation."

**4.** Section 1129(b) provides:

(b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted the plan.

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

(A) With respect to a class of secured claims, the plan provides—

(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of

Debtor's plan violates § 1129(b)(2)(A)(i) by not allowing Creditor to retain the entire lien securing her claim of $276,000.00.

Under § 1129(b)(2)(A)(i) a creditor must retain its lien on property even if a debtor transfers the property to another party. If a debtor seeks to sell property free and clear of liens, under § 1129(b)(2)(A)(ii) a creditor's lien must still attach to the proceeds of the sale. Since the Plan forces Creditor to partially release her lien against Broadview without her lien attaching to the proceeds of any of the released properties, the Plan does not satisfy §§ 1129(b)(2)(A)(i).

But failure to satisfy § 1129(b)(2)(A)(i) is not fatal to confirmation if the Plan does satisfy § 1129(b)(2)(A)(iii).

Creditor contends the Plan does not provide her with the indubitable equivalent of her secured claim, and therefore does not satisfy § 1129(b)(2)(A)(iii). Although Creditor did not address this issue in her brief, at the hearing she did argue that the substitution of an annuity for real property as collateral for her obligation did not constitute her receiving the indubitable equivalent under § 1129(b)(2)(A)(iii).

The standard for what constitutes an "indubitable equivalent" under § 1129(b)(2)(A)(iii) was first articulated in *In re Murel Holding Corp.*, 75 F.2d 941 (2nd Cir.1935).[5] In *Murel,* the secured creditor appealed from an order denying its motion for relief from stay. 75 F.2d at 941. The second mortgage holder had agreed to provide $11,000 to finance improvements in an apartment building, with that financing to be repaid ahead the first mortgage holder's principal. *Id.* The debtor had proposed paying the first mortgage holder interest only at 5½% for the ten year term of the plan. *Id.* at 942. After noting that a plan must " 'provide adequate protection for the realization by' ... the

dissenting class, 'of the full value of their interest, claims or liens' ", the court went on to rule that:

[i]t is plain that 'adequate protection' must be completely compensatory; and that payment ten years hence is not generally the equivalent of payment now. Interest is indeed the common measure of the difference, but a creditor who fears the safety of his principal will scarcely be content with that; he wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior holders, unless by a substitute of the most indubitable equivalence.

*Id.* Then noting that the creditor would be forced to forego amortization payments on the principal for ten years and that the current equity margin in the property was only ten percent, the court lifted the stay. *Id.* at 943.

Subsequently, in *United States v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) the Supreme Court considered the meaning of indubitable equivalent and found that *"Murel* used the words 'indubitable equivalence' with specific reference not to interest (which was assured), but to the jeopardized principal of the loan." 484 U.S. at 378, 108 S.Ct. at 634. The Ninth Circuit has similarly interpreted indubitable equivalent in *Murel* to mean that a debtor's plan must provide adequate assurance of the safety of a secured creditor's loan principal. *In re American Mariner Indus., Inc.,* 734 F.2d 426, 433 (9th Cir.1984).

Thus, to the extent a debtor seeks to alter the collateral securing a creditor's loan, providing the "indubitable equivalent" requires that the substitute collateral

---

such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

**5.** The Congressional Record Statements (Reform Act of 1978) indicate that "[t]he standard of dubitable equivalents" is taken from *In re Murel Holding Corp.*, 75 F.2d 941 (2nd Cir. 1935)." H11103–05 (daily ed. Sept. 28, 1978); s17420–22 (daily ed. Oct. 6, 1978); remarks of Rep. Edwards and Sen. DeConcini.

not increase the creditor's risk exposure. Therefore,

> [i]f a reorganization plan proposes to satisfy an allowed secured claim with anything other than the secured creditor's collateral, a court must examine (1) whether the substituted security is completely compensatory and (2) the likelihood that the secured creditor will be paid.

*In re San Felipe @ Voss, Ltd.*, 115 B.R. 526 (S.D.Tex.1990).

Courts considering the issue of substitute collateral have found that promissory notes secured by deeds of trust given in exchange for a creditor's release of his deed of trust against a debtor's property [6], and that securities given in lieu of cash [7] may satisfy the indubitable equivalent requirement of § 1129(b)(2)(A)(iii).

■ Here, Debtor proposes to substitute an annuity contract in exchange for a release of Creditor's security interest in both the Deedholder's properties, and for Creditor's future partial releases of her security interest against Broadview as Andre continues to develop and market that land.

While it is not possible for the court to make a factual determination, since the annuity contract provider has not been specified, the court may still conclude that such a contract provided as substitute for a partial release of Creditor's security interest would satisfy the indubitable equivalent requirement of § 1129(b)(2)(A)(iii). First, the annuity contract alone would be completely compensatory of Creditor's claim, since it would pay her the $12,000 per year that she is currently entitled to under the Settlement. Second, assuming that the contract is provided by a AAA insurance company or similar organization, such a contract combined with the Plan requirement that Creditor is entitled to retain a security interest in Broadview equal to one and one half times the amount of her claim would assure that Creditor's allowed secured claim will be repaid in full. If anything, given the vagaries of the real estate market, the diversification of Creditor's collateral through the substitution of an annuity contract would seem to decrease Creditor's overall risk exposure. Therefore, the court concludes that Debtor's Amended Plan may satisfy the indubitable equivalent test of § 1129(b)(2)(A)(iii).

Next, Creditor argues that because the Settlement is incorporated into the state court divorce decree, the full faith and credit clause of the Constitution prevents this court from modifying the contractual language of the Settlement. Creditor asserts that any action to impair her contractual rights under the divorce decree is beyond the authority of this court.

■ Creditor's argument misinterprets the interaction between the Bankruptcy Code and a valid state court judgment. Title 28 U.S.C. 1738 [8] obligates the federal courts to afford full faith and credit to state court judgments. The full faith and credit clause makes a judgment res judicata concerning matters that have already been fully litigated, and precludes another forum from relitigating the same matter.[9] Here, the Plan does not attempt to relitigate the Settlement, nor does it dispute the character or existence of the debt.

**6.** *See, Matter of Sun Country Dev., Inc.*, 764 F.2d 406, 409 (5th Cir.1985).

**7.** *See, In re San Felipe @ Voss, Ltd.*, 115 B.R. 526, 531 (S.D.Tex.1990).

**8.** Title 28 U.S.C. section 1738 provides:
The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved where admitted in other courts within the United States and its territories and possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that said attestation is in proper form.
Such acts, records and judicial proceedings or copies thereof, so authenticated shall have the full faith and credit in every court within the United States and its territories and possession as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

**9.** See, e.g. *In re Alston*, 49 B.R. 929 (Bankr. E.D.N.Y.1985).

As a result of the state court judgment, Creditor has a claim [10] against Debtor. Under § 1123(b) a debtor's plan may "impair or leave unimpaired any class of claims, secured or unsecured." A plan provision which does not seek to relitigate a claim based on a state court judgment but only impairs that claim via its treatment in the plan does not involve, and therefore does not violate, the full faith and credit clause.

Finally, Creditor argues that the court cannot confirm the Plan because it violates § 524(e),[11] and therefore does not satisfy § 1129(a)(1). Debtor argues that § 524(e) is not applicable because § 1123(a)(5)(E) specifically allows Debtor to provide for the "satisfaction or modification of any lien," and the Plan provision, in part, giving Creditor a commercial annuity as substitute collateral in exchange for her release of the Deedholder's properties from liability is as specifically authorized in § 1123. Debtor concludes that as long as a lien modification meets the "cram down" requirements of § 1129, the resultant release of any property from liability is sanctioned. Finally, Debtor asserts that § 524(e) and § 1129(b)(2)(A)(iii) conflict, that the more specific section in conflict should control over the general, and that such a conflict should be resolved in favor of Debtor.

Debtor's argument that § 1123 somehow authorizes the modification of Creditor's lien against non-debtor Deedholder's properties is mystifying. First, § 1123 alone provides no independent power for the court to confirm a plan. Section 1123(a) mandates what a plan must contain, such as: designating various classes of claims, specification of whether a class is impaired, provision that each claim in a class receives the same treatment, and adequate means for a plan's implementation; § 1123(b) addresses what a plan may provide. Further, while § 1123(a)(5)(E) does not explicitly state that satisfaction or mod-

ification of a lien can be done only to liens against property of a debtor or the estate, a contrary reading "challenges a basic tenet of the Code that Chapter 11 cases generally are for the protection of the debtor only," and not to protect non-debtor third parties. *In re Rohnert Park Auto Parts, Inc.*, 113 B.R. 610, 614 (9th Cir. BAP 1990) (citations omitted). Debtor's interpretation would create a conflict between § 1123(a)(5)(E) and § 524(e)'s mandate that the effect of a discharge "does not affect the liability ... or the property of any other entity for such debt." Such a construction violates a basic cannon of statutory construction that:

> each part or section should be construed in connection with every other part or section so as to produce a harmonious whole. Thus, it is not proper to confine interpretations to the one section to be construed.

*In re Performance Communications, Inc.*, 126 B.R. 473, 476 (Bankr.W.D.Pa. 1991) (citations omitted). *See also, King v. St. Vincent's Hospital,* — U.S. —, —, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991); *Massachusetts v. Morash*, 490 U.S. 107, 115, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989). A court, when construing a statute, is obliged to give effect, if possible, to every word used. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2332, 60 L.Ed.2d 931 (1979). A statute should not be interpreted, if possible, so as to render any part of it inoperative. *U.S. v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–20, 99 L.Ed. 615 (1955). Debtor's argument invites an interpretation of § 1123(a)(5)(E) which would effectively disregard § 524(e)'s prohibition of the discharge of property of non-debtors. The court declines to follow such an interpretation. Finally, while it is undisputed that modification of a lien as authorized under § 1123(a)(5)(E) must meet the "cram down"

---

**10.** Section 101(5) defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured...."

**11.** Section 524(e) provides:
Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, *or the property of any other entity* for, such debt (emphasis added).

requirements of § 1129 by satisfying one of the alternatives under § 1129(b)(2)(A), satisfaction of the cram down provisions alone does not assure confirmation of a plan. Section § 1129(b)(1) is clear that a plan may be crammed down only if,

> all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

Therefore, satisfaction of one of § 1129(b)(2)(A)'s provisions alone does not necessarily guarantee confirmation of a plan. Any plan provision which modifies a lien must also satisfy § 1129(a)(1), and by incorporation § 524(e). Under § 1129(a), a bankruptcy court must make an independent determination that a plan complies with the provisions of Title 11. *Rohnert Park,* 113 B.R. at 617.

Here, since the Plan proposes to release the non-debtor Deedholder's properties from obligations to Creditor, the Plan still violates § 524(e) and cannot be confirmed. "The clear weight of authority supports the proposition that Chapter Eleven plans which call for the release of non-parties (such as guarantors) from liability upon obligations of the debtor are violative of § 524(e)." *In re Future Energy Corp.,* 83 B.R. 470, 486 (Bankr.S.D.Ohio 1988) (citing *Underhill v. Royal,* 769 F.2d 1426, 1432 (9th Cir.1985)); *In re Rohnert Park Auto Parts, Inc.,* 113 B.R. 610, 616 (9th Cir.BAP 1990); *In re American Hardwoods,* 885 F.2d 621, 626 (9th Cir.1989). For purposes of compliance with § 524(e), a plan which compels a creditor to release liens against properties of non-debtors is indistinguishable from a plan which forces a creditor to release guarantors from their personal liability.

Debtor argues that this outcome is unfair. Creditor is attempting to leverage (Debtor would say extort) the full balance of the unpaid Settlement from Debtor, Andre and the title company. By her action, Creditor is attempting to enhance her economic position by forcing full payment now rather than over the Settlement's term. This would result in a substantial economic windfall for the creditor.[12] While these allegations may be true, they ignore the fact that Debtor, Andre, and the title insurance company have, by their own actions, placed themselves in this very precarious position by their apparent decision to attempt to finesse the problem of dealing with Creditor's interest when putting together the Broadview development. That decision has not worked out well to date, and as a result Debtor, Andre and the title company appear to be at a substantial disadvantage. Creditor has a legal right to object to the Plan's attempt to expand the statutory Chapter 11 discharge in a way that is specifically prohibited by the Code. Section 524(e) is clear that a discharge of a debtor "does not affect the liability of … the property of any other entity for such, debt." The question of the propriety, fairness, or morality of the Creditor's decision to exercise her other legal rights is for a forum other than this court.

## CONCLUSION

Debtor's Plan which provides an annuity contract as substitute collateral for a partial release of Creditor's lien against property of the estate may satisfy the indubitable equivalent requirement of § 1129(b)(2)(A)(iii) for purposes of cramming down a plan on the non-consenting class.

A plan which does not attempt to relitigate a ex-spouse's claim arising out of a state court property settlement does not violate the full faith and credit clause of the Constitution.

Debtor's Plan provision which required Creditor to release her security interest

---

**12.** The evidence at the claims hearing supported a finding that the remaining payment stream on the Settlement had a present value of $122,742

(23 Annual payments discounted at 9.5%) as opposed to the total of payments due of $276,-000.

against property held by non-debtor third parties violated § 524(e), and therefore, cannot be confirmed as it does not satisfy the requirement of § 1129(a)(1) that a plan comply with the provisions of Title 11.

The Court will enter an order consistent with this memorandum opinion.